STATE OF CONNECTICUT *v.* THOMAS R. O'BRIEN
(10736)

O'CONNELL, FREEDMAN and SCHALLER, Js.

---

Argued November 2—decision released December 22, 1992

*Deborah Del Prete Sullivan,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Timothy J. Sugrue,* deputy assistant state's attorney, with whom, on the brief, were *Mary Galvin,* state's attorney, and *Michael J. Weber, Jr.,* assistant state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A) and two counts of risk of injury to

a child in violation of General Statutes § 53-21. On appeal, the defendant claims that he was denied a fair trial (1) because of improper remarks by the assistant state's attorney during closing argument, (2) because of alleged witness intimidation by the state, and (3) because the trial court failed to conduct an inquiry regarding the allegations of witness intimidation. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. The victim lived in a house in Milford with her mother, her brother and her sister. In October, 1990, when the victim was eleven years old, the defendant moved into a downstairs apartment located in the victim's house. On numerous occasions in early November, 1990, the defendant forced the victim to masturbate him. After each occasion, the defendant threatened to kill the victim if she told anyone what he had done.

On November 26, 1990, the victim went to the defendant's apartment to clean the apartment after she had used it for a slumber party. The defendant grabbed the victim, removed some of her clothing, held her hands and had intercourse with her. Afterward, the defendant again threatened to kill the victim if she told anyone.

Later that week, the victim was riding in a car with her mother and the defendant. They went to Bridgeport where the victim's mother purchased crack cocaine. The defendant and the victim's mother smoked the crack. At one point, when the car was stopped, the victim tried to run away. The defendant pulled her back into the car and threatened to kill her if she told anyone.

Later that day, the victim was able to run away and telephone a friend. The victim told her friend's mother that the defendant had sexually assaulted her. The friend's mother telephoned the police, picked her up

and took her to the police station. Thereafter, the defendant was arrested on the charges that resulted in his conviction.

I

The defendant first claims that the conduct of the assistant state's attorney, in his summation to the jury, violated the defendant's right to a fair trial. The defendant maintains that the prosecutor (1) argued facts not in evidence, (2) asserted his opinion and vouched for the credibility of witnesses, and (3) appealed to the jury to reach a verdict based on sympathy and emotion. Conceding his failure to preserve this claim, the defendant, relying on *State* v. *Williams,* 204 Conn. 523, 529 A.2d 653 (1987), seeks our review of this claim under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989),[1] or, in the alternative, asserts that the claim is reviewable as plain error under Practice Book § 4185. We are not persuaded.

"In analyzing the defendant's claim, we ask whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial miscon-

---

[1] A defendant "can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

duct." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams,* supra, 539–40. "While prosecutorial misconduct of constitutional dimension may arise during closing argument, thereby implicating the fairness of a trial . . . an unpreserved prosecutorial misconduct claim is not reviewable if the claimed misconduct consisted of isolated and brief episodes, did not disclose a pattern of conduct repeated throughout the trial, or conduct not blatantly egregious." (Citations omitted.) *State* v. *Hall,* 28 Conn. App. 771, 778, 612 A.2d 135, cert. denied, 224 Conn. 904, 615 A.2d 1045 (1992).

Our careful review of the record in this case reveals that the prosecutor's challenged conduct, while of questionable propriety in certain instances, was not so prejudicial as to taint the entire proceeding and deprive the defendant of the opportunity for a fair trial. *State* v. *Hammond,* 221 Conn. 264, 289, 604 A.2d 793 (1992); *State* v. *Tweedy,* 219 Conn. 489, 509, 594 A.2d 906 (1991). "Although certain remarks made by the prosecutor, from hindsight, may be deemed imprudent, such isolated and brief episodes as occurred here fail to implicate the denial of the defendant's constitutional right to due process." *State* v. *Somerville,* 214 Conn. 378, 393, 572 A.2d 944 (1990). Accordingly, the defendant's claim must fail because it cannot satisfy *Golding's* third prong. See footnote 1.

"Similarly, we do not find, as is necessary to merit plain error review, that those limited instances of improper conduct so pervaded the defendant's trial as to have impaired the effectiveness or integrity of the judicial process." *State* v. *Tweedy,* supra. Consequently, the defendant cannot succeed on this claim of impropriety.

## II

The defendant's remaining claims revolve around the alleged intimidation of a defense witness by a casewor-

ker for the department of children and youth services (DCYS). The defendant argues that this witness intimidation by the state violated his right to due process and his right to present a defense. The defendant also argues that the trial court improperly failed to conduct an inquiry into the allegation of witness intimidation and into the basis of the allegedly intimidated witness' refusal to testify based on her assertion of the fifth amendment privilege. We address both claims together.

The following additional facts are relevant to our resolution of this issue. On June 13, 1991, during the presentation of his defense, defense counsel informed the court outside of the presence of the jury: "Your Honor, outside in the hallway, DCYS has shown up and they have sat and told [the victim's mother], who was to be my next witness, that as soon as she is done testifying, they're taking away her kids. She is now outside sobbing thanks to [the DCYS social worker], who coincidently is a witness [for the state] in this case. I'm not going to put her on the stand today in the state that she's in. You know, I mean this is ridiculous. She's here to be a witness, she's got her kids here, DCYS shows up, they're involved in the case, and they tell my witness, 'Oh, we're taking away your kids as soon as you're done testifying.' This is, you know, I don't know if this is fact. I know that this is what my associate has just told me. I'm not going to put her on the stand in this condition. I don't want to subject her kids to that. I think this is grossly unfair." Although the trial court responded that it was "not very happy with what's going on here," it initially indicated that it did not "see why this woman can't come in and testify." After defense counsel protested, however, that "with the specter of DCYS taking her kids away hanging over her head, [the witness is] not going to be particularly in tune to my questions," the court consulted with counsel and adjourned the proceedings until five days later.

Five days later, on June 18, 1991, the victim's mother was called as a witness for the defense. She appeared with her own counsel and, under oath, expressed her intention to invoke her fifth amendment privilege against self-incrimination. At the time, there was pending against the witness a risk of injury to a minor charge based on the general events involved in the charges against the defendant. In response to an inquiry from the court, defense counsel indicated that the scope of his intended line of questioning concerned what happened in the house during the same time period in issue with respect to the charges against the defendant. Defense counsel did not pose any specific questions to the witness beyond an initial question of whether the witness intended to answer his questions. After hearing from the parties, the court concluded that the witness should be "excused from testifying further based on the fact that there are criminal charges pending against her that are somewhat related to the charges involved against the defendant in this case, and the statements that she may make in response to questions she is asked may incriminate her."

At no time did the defendant attempt to offer testimony from the victim's mother, the DCYS social worker, or any other witnesses regarding the alleged June 13 intimidation of the witness in the courthouse hallway. At no time did the defendant seek a mistrial in the trial court based on any claim of witness intimidation by the state. In fact, the events of June 13 were never mentioned on June 18 when the witness was sworn in as a witness and refused to testify, or at any time thereafter in the trial court.

In a postjudgment motion for a new trial,[2] the defendant did raise a claim regarding the refusal to testify

---

[2] The defendant framed his posttrial motion as a petition for a new trial. He did not follow the proper procedure for bringing a petition for a new trial. See *State* v. *Servello,* 14 Conn. App. 88, 100–102, 540 A.2d 378, cert.

by the victim's mother. At that time, the defendant claimed that the state improperly failed to dispose of the criminal charges pending against the victim's mother until after the defendant's trial in order to render her unavailable as a witness through her invocation of her right to refuse to testify. At the hearing on the motion, the court asked defense counsel if he had "any evidence of anything improper on the part of the state here other than what you recited about the timing of these two cases going along," to which defense counsel replied: "I do not, Your Honor." After considering the arguments of counsel, the court concluded that it did not "find anything improper on the part of the state here in inducing [the victim's mother] not to testify. She conferred with her attorney. She made an election not to do so" based on her constitutional privilege. Further, the court stated that it could not find that the testimony expected from the victim's mother would have caused a different result in the outcome of the case.

A claim that the state has intimidated a defense witness raises serious questions that go to the core of the constitutional right to a fair trial. "A defendant's right to offer the testimony of witnesses is protected by the due process clause of the fourteenth amendment. *Webb* v. *Texas,* 409 U.S. 95, 93 S. Ct. 351, 34 L. Ed. 2d 330 (1972). The prosecution violates this important right when it engages in conduct or makes comments aimed at discouraging defense witnesses from testifying freely." *Boggess* v. *State,* 783 P.2d 1173, 1179 (Alaska App. 1989). "Threats against witnesses are intolerable. Substantial government interference with a defense witness' free and unhampered choice to tes-

denied, 208 Conn. 811, 541 A.2d 1240 (1988). Since the defendant does not challenge the trial court's denial of this motion, we need not explore the effect of this procedural error. Compare *Waterworks* v. *Audet,* 29 Conn. App. 722, 617 A.2d 932 (1992) (per curiam).

tify violates due process rights of the defendant." *United States* v. *Goodwin,* 625 F.2d 693, 703 (5th Cir. 1980).

The defendant claims for the first time on appeal that the intimidation of the victim's mother by the state deprived him of his constitutional right to present a defense and to a fair trial. Arguing that the DCYS social worker was a member of the "prosecution team," the defendant contends that the social worker's statement to the witness that her children would be taken from her by DCYS after she finished testifying impermissibly "linked the witness' favorable testimony to the loss of her children." Because the defendant did not raise this claim in the trial court, he seeks review under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

We conclude, however, that the record in this case is not adequate to review the claim of witness intimidation. The evidentiary support for the defendant's claim consists entirely of the statements of counsel regarding what allegedly had occurred in a hallway conversation between his witness and the DCYS social worker. Not only are the representations of counsel not evidence; *State* v. *Roman,* 224 Conn. 63, 68, 616 A.2d 266 (1992); but the statements of counsel relied on by the defendant were based on information relayed to counsel by another person. In fact, after defense counsel reported the information to the court, he stated that he did not know if the information was true. "The defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." *State* v. *Golding,* supra, 240. Accordingly,

the defendant's claim must fail because he cannot satisfy *Golding's* first prong. See footnote 1.

Perhaps recognizing this deficiency in the record, the defendant next argues that "[i]n light of the allegation of government interference with a defense witness which was brought to the court's attention during trial, the court should have conducted a particularized inquiry on that allegation and also a more detailed inquiry into the basis of the defense witness's subsequent assertion of the fifth amendment privilege against self-incrimination." We disagree.

"Threats against witnesses are intolerable." *United States* v. *Goodwin,* supra. When information comes to a court's attention that suggests that there has been government interference with a defense witness' free and unhampered choice to testify, the due administration of justice may require further inquiry by the trial court. Nonetheless, "[a] trial judge is given great latitude in ensuring that a criminal trial be conducted in a manner that approaches, as nearly as possible, an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding. . . . Given the fact that the trial judge is not simply a referee presiding over a forensic contest, but is a minister of justice, he is, for that purpose, vested with the authority to exercise a reasonable discretion in the conduct of a trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Lucci,* 25 Conn. App. 334, 341, 595 A.2d 361 (1991).

Here, defense counsel reported to the court that alleged statements by a DCYS social worker regarding her intention to take custody of the witness' children had caused his next witness to become upset. Defense counsel complained that it would be unfair to have the witness testify while emotionally distraught due to the impending actions of DCYS. We believe that

the information before the court did not contain sufficient indicia of witness intimidation to trigger the court's duty to investigate further.

The information conveyed to the court was deficient in two important respects. First, nowhere was it suggested to the court that the intended DCYS action against the witness was in any way contingent on or in retaliation for her expected testimony. The information before the court showed only that DCYS was informing the witness that it intended to carry out its statutory mandate. See General Statutes § 17a-90 et seq. There is no reason to conclude that the remark attributed to the DCYS social worker, however ill-timed, was intended to affect the witness' contemplated testimony. Compare *United States* v. *Hammond,* 598 F.2d 1008, 1012–13 (5th Cir. 1979) (reasonable to interpret FBI agent's comments as threat to retaliate if witness continued to testify). Second, defense counsel's concern in bringing the hallway incident to the court's attention was not to suggest witness intimidation. Rather, he was concerned that the hallway incident had rendered his witness unable to testify effectively at that particular time. Through the continuance granted by the trial court, the defendant appears to have obtained all the relief needed to remedy the problem that he identified to the court. We find it highly significant that the defendant never mentioned the hallway incident again until it was raised on appeal. The defendant's failure to raise the issue of witness intimidation in the trial court suggests that he did not at that time interpret the incident as harmful in the same way that he now presents it on appeal. We do not find that the trial court abused its discretion in not reading more into the information than that presented during the trial. See *State* v. *Sullivan,* 11 Conn. App. 80, 86, 525 A.2d 1353 (1987). In light of both of these circumstances, we do not find that there was a sufficient quantum of reliable infor-

mation before the trial court to implicate the court's obligation to undertake proceedings to assure itself that the integrity of the judicial process was not being undermined.

Furthermore, the trial court adequately explored the basis of the witness' refusal to testify. When the victim's mother refused to testify, the court determined that the witness had properly invoked her fifth amendment privilege. Later, in the proceedings on the motion for a new trial, the court specifically found that the state had not improperly induced the victim's mother to refuse to testify. The incident in this case is far from the "unresolved claims of government intimidation of defense witnesses . . . [that we] would be required to remand to the [trial] court for findings on the validity of these claims." *United States* v. *Goodwin,* supra. The trial court properly carried out its duty to ensure the integrity of the judicial process.[3] Under these cir-

---

[3] As a corollary to this claim, the defendant also argues that the witness' "blanket assertion" of her fifth amendment privilege should not have been accepted. He argues that, by permitting such a blanket assertion, the trial court failed to determine the real reason why the witness refused to testify, which according to the defendant was impermissible witness intimidation by the state.

We agree with the defendant that a witness must "claim the privilege as to each specific question asked of him and as to each, before he would be justified in refusing to answer, it must appear that there was reasonable ground to apprehend from it some real danger of incrimination." *McCarthy* v. *Clancy,* 110 Conn. 482, 490, 148 A. 551 (1930). The witness, however, did claim the privilege in response to the *limited* number of questions posed by defense counsel. Further, the court clarified that defense counsel intended to question the witness "pertaining to what happened in the home and that would get into the question of physical abuse . . . and who did it and so on. . . ." Defense counsel did not seek to pose further questions and never sought to pose, as suggested on appeal, "questions of a limited scope rebutting the state's evidence and going directly to the credibility of [the victim]" which would not have given rise to a legitimate fear of prosecution.

Because the trial court adequately explored the basis of the witness' refusal to testify, we do not believe that the trial court failed to explore any information suggesting that the real reason for the witness' refusal to testify was impermissible witness intimidation by the state.

cumstances, we discern no violation of the defendant's right to a fair trial as a result of the trial court's failure to inquire sua sponte into matters brought to its attention that the defendant now claims amounted to the impermissible intimidation of a defense witness.

The judgment is affirmed.

In this opinion the other judges concurred.