[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a petition seeking habeas corpus relief from allegedly unlawful confinement resulting from a judgment of conviction, after a jury trial, of sexual assault first degree, sexual assault third CT Page 2783 degree, and two counts of risk of injury to a minor, for which judgment the petitioner received a total, effective sentence of ten-years incarceration. This judgment of conviction was affirmed on appeal, State v. O'Brien, 29 Conn. App. 724 (1992).
In the first count of his amended petition, the petitioner claims that his confinement is unlawful because his trial counsel, Attorney Edmund Collier, rendered ineffective assistance at his criminal trial. The second and third counts of the amended petition, alleging witness intimidation and prosecutorial misconduct, were dismissed previously for lack of good cause justifying the failure to raise these issues at trial or on direct appeal under the cause and prejudice standard of Wainwright v.Sykes, 433 U.S. 72 (1977), which standard was adopted by our Supreme Court in Johnson v. Commissioner, 218 Conn. 403, 409
(1991).
As to the first count, the petitioner asserts that Collier rendered ineffective assistance by failing to subpoena the psychological and medical records of the victim; by failing to subpoena the medical records of the petitioner; by failing to investigate adequately the Department of Children and Youth Services (DCYS) file for the victim; by failing to create a sufficient record at trial as to witness intimidation; by failing to present certain alibi evidence; by failing to call the victim's brother, Shawn Dixon, as a witness; by failing to preserve a tape-recording of a 911 call by the petitioner to the Milford police department; and by failing properly to explore the credibility of a prosecution witness on cross-examination. Additional allegations of ineffectiveness in the amended petition were abandoned in the petitioner's posttrial brief.
The criminal charges against the petitioner involved accusations that the petitioner, who was then on supervised home release while serving an unrelated prison term, raped and otherwise sexually assaulted the twelve year old daughter of a woman in whose rented house the petitioner was staying. The main part of the house was occupied by the victim, her mother, and three siblings. The petitioner occupied an in-law apartment into which he had moved, just before Halloween of 1990.
According to the accusations, on November 26, 1990, the petitioner lured the victim to his apartment by stating that the apartment was unkempt and needed cleaning by her. The victim entered the petitioner's apartment and discovered that no cleaning CT Page 2784 was necessary. The petitioner then raped the victim and threatened to kill her if she ever told anyone about what transpired. During the period between Halloween and November 26, 1990, the petitioner had forced the victim to masturbate him, and on one occasion he unsuccessfully attempted to compel the victim to fellate him. These assaults were also accompanied by death threats.
For two days after the rape, the victim remained silent about it. On November 28, 1990, however, the petitioner, the victim's mother, and the victim were driving to Bridgeport to pick up a pizza. Instead of acquiring the food, the victim's mother drove to a housing project in that city and purchased crack cocaine. The victim became extremely upset by this turn of events and tried to exit the vehicle. She was restrained by the petitioner. When the petitioner and her mother stopped to smoke the crack and drink alcohol, the victim was able to flee.
The victim phoned a girlfriend and eventually spoke to her friends's mother, Ilene Nordle. The victim frantically related her predicament and suggested that the petitioner had engaged in sexual acts with her. Nordle contacted the authorities, and the victim was taken to police headquarters where she was interviewed by police officers and a variety of social service personnel. During these interviews she revealed the details of her accusations against the petitioner.
The petitioner's defense at his criminal trial to these charges was that the victim fabricated the allegations and that the petitioner never assaulted her.
Our Supreme Court has adopted the two-pronged Strickland test for evaluating ineffective assistance claims; Ostolaza v. Warden,26 Conn. App. 758, 761 (1992). That test requires that the petitioner demonstrate, by a preponderance of the evidence, both, that his counsel's performance was substandard and that there exists a reasonable probability that, but for counsel's, deficiencies, the outcome of the proceedings would have been different. Id.
As to the first prong of the Strickland test, the petitioner must demonstrate that his trial attorney's representation fell below an objective standard of reasonableness, Johnson v.Commissioner, 218 Conn. 403, 425 (1991). This standard of reasonableness is measured by prevailing, professional norms, Id. The habeas court must make every effort to eliminate the distorting CT Page 2785 effects of hindsight and to reconstruct the circumstances surrounding counsel's conduct from that attorney's perspective at the time of the representation, Id.
In order to satisfy the second or prejudice prong of theStrickland test, the petitioner must prove, by a preponderance of the evidence, that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, Levine v. Manson, 195 Conn. 636 (1985), p. 640. Reasonable probability means a probability sufficient to undermine confidence in the verdict, Bunkley v. Commissioner,222 Conn. 444 (1992), p. 454; that is, the petitioner must show that there is a reasonable probability that he remains burdened by an unreliable determination of guilt, Id.
 A.
The petitioner claims that Collier rendered ineffective assistance by failing to secure the psychological records of the victim. The credibility of the victim was crucial in the case, and the petitioner contends that Collier should have retrieved any psychological records of the victim to locate evidence to undermine her believability. If it is easier to dispose of an ineffective assistance claim on the ground of insufficient prejudice, the habeas court need not address the question of counsel's performance, Pelletier v. Warden, 32 Conn. App. 38 (1993), p. 46. Because the court concludes that an examination of the prejudice component of the Strickland test is dispositive as to this issue the court proceeds to address that issue directly.
At the habeas hearing, the petitioner never produced the records which he claims Collier was remiss for failing to obtain. To presume that these unspecified records contain information germane to the victim's credibility and beneficial to the petitioner would be pure speculation. The absence of such material before the court is fatal to the petitioner's claim that he was prejudiced by Collier's failure to obtain the same. The court has no basis for knowing if these records existed at the time Collier was preparing for trial or whether the records, if they existed, contained material useful to the defense. The petitioner has failed to meet his burden of proving that, but for the lack of these records, there exists a reasonable probability that the outcome of the petitioner's criminal trial would have been different. CT Page 2786
 B.
The petitioner also claims that Collier was ineffective by inadequately reviewing the DCYS file for the victim. Contrary to the petitioner's contention, the court finds that Collier thoroughly reviewed the DCYS file "page by page." An examination of the trial transcript demonstrates that Collier expertly and extensively used the file in his cross-examination of Renee Hoff, the DCYS social worker who handled the victim's case (Joint Exhibit B-4, pp. 369 through 385). This questioning of Hoff effectively placed the contents of the file, beneficial to the petitioner, before the jury.
The petitioner presented no legal expert at the habeas hearing, to refute Collier's manner of handling this file. The petitioner has failed to meet his burden of proving Collier's representation in this regard fell below prevailing professional norms.
 C.
The petitioner also contends Collier rendered ineffective assistance by failing to establish, for purposes of appeal, a trial record of intimidation of a defense witness, the victim's mother, by DCYS. The court finds that, while the victim's mother was waiting to be called as a defense witness at the petitioner s criminal trial, she learned that DCYS intended to take custody of two of the victim's siblings after the mother testified. This news disconcerted the witness.
Collier had the opportunity to call the witness to testify that day, but he asked the trial court for a continuance so that the victim's mother might compose herself (Joint Exhibit B-6, p. 566). Collier declined to put the victim's mother on the stand while in such an emotionally distraught state. Reluctantly, the trial court granted the defense request. It should be noted that the witness apparently remained at the courthouse (Joint Exhibit B-6, p. 568).
Five days later, Collier called the victim's mother to testify. In the intervening days, the victim's mother, who was then facing criminal charges arising from her activity on November 28, 1990, consulted with her public defender. Following her attorney's advice, the victim's mother refused to testify (Joint Exhibit B-7, p. 590). CT Page 2787
The petitioner raised an issue of witness intimidation on direct appeal, State v. O'Brien, supra, 728. Our Appellate Court found that the trial record was insufficient to merit review of this issue, Id., 733. The petitioner asserts that Collier was deficient in neglecting to create a sufficient trial record. The court disagrees.
The court finds that the petitioner has failed to prove witness intimidation occurred. The actions by DCYS appear independent of the witness's decision to testify or not. These actions appear devoid of any intent to persuade the witness to alter or curtail testimony. The record is clear that the witness' was present to testify if the defense wished to call her. Collier decided, instead, to request a continuance so that his witness would appear calmer and more collected. The court finds that the witness's subsequent refusal to testify resulted from her desire to avoid incriminating herself and was based on her counsel's advice rather than any putative threat by DCYS.
As the Appellate Court noted, "the information before the court did not contain sufficient indicia of witness intimidation to trigger the court's duty to investigate further, " Id., 734. In a like vein, the available information was insufficient to trigger a duty by Collier to attempt to create a record of witness intimidation. Collier testified at the habeas hearing that he never sensed that DCYS had decided to remove the witness's children from her custody as retaliation for her imminent testimony for the defense. Collier's displeasure with DCYS arose from the timing of the revelation which caused his witness to lose her composure just before taking the stand.
As noted above, the petitioner produced no legal expert to attack Collier's action on this issue. The court concludes that Collier's representation of the petitioner was not delinquent in the manner alleged.
 D.
The petitioner also claims that Collier was ineffective by inadequately proving the whereabouts of the victim at the time of the rape on November 26, 1990. Essentially, the petitioner argues that Collier ought to have obtained evidence from the school bus company which serviced the victim's family as to the scheduled pick-up time for the victim on that date. At the criminal trial, the victim stated that her siblings were transported by bus earlier CT Page 2788 than she was (Joint Exhibit B-3, p. 155). Her sister and brother testified at that trial that the victim was not the last family member to be picked up on that date (Joint Exhibits B-6, p. 537 and B-7, p. 610).
If it is easier to dispose of an ineffective assistance claim on the ground of insufficient prejudice, the habeas court need not address the question of counsel's performance, Pelletier v. Warden,32 Conn. App. 38 (1993), p. 46. Because the court concludes that an examination of the prejudice component of the Strickland test is dispositive as to this issue, the court proceeds to address that issue directly. The petitioner never produced the pertinent school bus records at the habeas hearing. The court cannot speculate as to whether these records were available to Collier at the time of trial or whether the contents of any such records would have, supported or contradicted the defense position. The court finds that the petitioner has failed to prove he was prejudiced by the absence of this evidence.
 E.
The petitioner also claims that Collier rendered ineffective assistance by failing to proffer available alibi evidence. Specifically, the petitioner asserts that the petitioner's erstwhile employer, Rachel Peterson, could have been called as a defense witness to provide evidence as to the petitioner's time at work during the interval between Halloween and November 26, 1990.
Collier stated at the habeas hearing that he declined to call Peterson because her testimony would have amounted to nothing more than a regurgitation of the time sheets which the petitioner
prepared and submitted to her with little verification by her. Also, the petitioner conceded he was home when the alleged rape occurred on November 26, 1990, and the remaining count of risk of injury has no specific dates to refute or negate. The court finds Collier's testimony credible and accurate on this point.
Again, the petitioner proffered no legal expert whose opinion questioned the soundness of Collier's tactical decision. Collier's assessment of the negligible value of Peterson's testimony appears reasonable. The evidence was of questionable relevancy because the risk of injury occurred on divers and unspecified dates and times. The court finds that the petitioner has failed to meet his burden of proving that Collier's representation was substandard in this regard. CT Page 2789
 F.
The petitioner also claims that Collier was remiss by declining to call the victim's brother, Shawn, as a defense witness at his criminal trial. At the habeas hearing Collier related that, while the criminal case was pending, Collier was never allowed to know of Shawn's location because Shawn was then a fugitive for whom an arrest warrant had been issued. Also, Shawn was a convicted felon. Collier estimated that he could present the same subject matter through other family members whose testimony would be untainted by Shawn's criminal history.
No legal expert was presented to indicate that Collier's decision to eschew calling Shawn, a convicted felon who was on the lam and whose information was reasonably available through other sources, as a defense witness fell beneath prevailing, professional standards. Judicial scrutiny of counsel's performance must be "highly deferential," and the habeas court must indulge a strong presumption that trial counsel's representation falls within the "wide range" of reasonable, professional assistance, Quintana v.Warden, 220 Conn. 1, 5 (1991). The petitioner has failed to meet his burden of demonstrating that Collier's representation in this regard fell outside the wide range of reasonable, legal assistance.
Also, Shawn never testified at the habeas hearing. Thus, it his burden of demonstrating that Collier's representation in this regard fell outside the wide range of reasonable, legal assistance. Also, Shawn never testified at the habeas hearing. Thus, it is speculation as to what he might have said at trial. The burden of proving prejudice is on the petitioner. The petitioner has failed to prove that Collier's decision not to use Shawn as a' defense witness creates a reasonable probability that, but for that absence, the outcome of his criminal trial would have been different.
 G.
The petitioner also claims that Collier rendered ineffective assistance by failing to preserve a tape-recording of a 911 phone call which the petitioner made to the Milford police department. At the criminal trial, the prosecution introduced evidence that the plaintiff phoned the Milford police department between 11:15 and 11:30 p.m. on November 28, 1990, and spoke to Officer Edson of that department. Edson testified that the petitioner disclaimed CT Page 2790 sexually assaulting the victim and declared he was impotent. The prosecution offered this testimony because, at the time of the phone call, no law enforcement agent had informed the petitioner of the victim's accusations.
The petitioner testified at the habeas hearing that his recollection of the phone conversation differed from Edson's account of it. The petitioner contends that preservation of the recording of the phone call would have made it available at trial to refute Edson's version of it. The petitioner also testified that he specifically asked Collier to obtain any recording of the phone call.
Collier stated at the habeas hearing that his examination of the police report pertaining to this phone call indicated that the call was not a 911 emergency call, but a routine call. Collier stated he doubted the recording of such an ordinary call would be kept for long. He noted that the petitioner's request to him concerning a discrepancy with Edson's version of the call came some seven months after the date of the call.
No evidence was introduced at the habeas hearing regarding whether such phone calls were, on the date in question, tape-recorded by the Milford police nor regarding the length of time such recordings are kept if made. The court finds that the petitioner has failed to meet his burden of proving such a recording was made and would have been retained long enough for Collier to have reasonably requested preservation.
 H.
The plaintiff also asserts that Collier was ineffective by failing to investigate and question a prosecution witness, Ilene Nordle, properly. Nordle, as mentioned above, was the mother of the friend whom the victim phoned on November 28, 1990, after fleeing from the petitioner and her mother. Nordle testified at the petitioner's criminal trial as a constancy of accusation witness. Numerous other witnesses testified in the same capacity. The petitioner argues that Collier ought to have brought before the jury the fact that Nordle operated an escort service which was a front for a prostitution ring. The purported significance of this evidence was that the petitioner was an employee of Nordle, rather than a one-time acquaintance as she testified, and that Nordle harbored animosity toward the victim's mother, who had worked as a prostitute for Nordle but terminated such employment. CT Page 2791
Collier testified at the habeas hearing that he intentionally declined to plumb the depths of Nordle's operation because this approach would have necessitated disclosure to the jury that the victim's mother had engaged in prostitution and that the petitioner worked for Nordle transporting the prostitutes to and from their clients' locations. Also, it was revealed by the petitioner that he sometimes received payment in the form of sexual services by the prostitutes he assisted. This activity occurred while he was on parole.
Collier perceived little benefit from attacking Nordle in this way because Nordle's recollection of the victim's statement about the sexual assault upon her by the petitioner was consistent with and cumulative of the testimony of several other witnesses including the victim. Such a procedure had little to gain but would have exposed the petitioner and the victim's mother, who Collier intended to call as a defense witness, to a potentially negative assessment by the jury because of their illegal and sordid occupations. This risk of negative reaction by the jury to the! petitioner is magnified because the petitioner s sexual immorality and sexual appetite were the subject of the charges against him.
Again, no legal expert contradicted Collier's tactical decision on this issue. The court finds that Collier's decision to avoid attacking Nordle's credibility in the fashion proposed by the petitioner was reasonable and sage. The petitioner has failed to meet his burden of proving Collier's assistance was substandard in this regard.
 I.
The petitioner also claims that Collier rendered ineffective, assistance by failing to obtain and offer at trial the petitioner's, medical records from prison. The petitioner contends that such records would have eliminated him as the source of the victim's vaginitis.
The prosecution at the petitioner's criminal trial had introduced evidence from Dr. Anand, who examined the victim on November 29, 1990, that the victim had contracted vaginitis (Joint Exhibit B-6, p. 475). The doctor also opined that vaginitis in a twelve year old girl most likely was caused by recent intercourse (Joint Exhibit B-6, pp. 476 and 479). CT Page 2792
Collier noted at the habeas hearing that he never sought the petitioner's medical records from prison because vaginitis occurs solely in women, and men exhibit no symptoms of the disease making it unlikely the petitioner's medical records would contain relevant information. Collier did present the testimony of a medical expert at the criminal trial to contradict Dr. Anand's opinion as to the likely cause of the vaginitis, however.
The medical records in question were never offered at the habeas hearing. The petitioner has not pointed out any specific item contained in the records available to Collier for trial that would bear on the issue of excluding the petitioner as the source of the victim's ailment. The court finds that the petitioner has failed to meet his burden of proving he was prejudiced by Collier's refusal to obtain and offer his medical records while incarcerated at his criminal trial.
 J.
Finally, the petitioner also asserts that Collier's assistance was deficient for failing to obtain the medical records of the victim which showed that while she had vaginitis, she tested negatively for gonorrhea and chlamydia (Petitioner's Exhibits O and P). The court feels this evidence is so trivial as to have no bearing whatever on the outcome of the petitioner's criminal trial.
For these reasons, the petition is dismissed.
Sferrazza, J.