## STATE OF CONNECTICUT *v.* MARC YOUDIN
## (13262)

O'CONNELL, HEIMAN and SCHALLER, Js.

Argued February 7—decision released May 30, 1995

*Jon L. Schoenhorn,* for the appellant (defendant).

*John A. East III,* deputy assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan,*

state's attorney, and *Richard Colangelo,* assistant
state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judg-
ment of conviction, after a jury trial, of possession of
narcotics in violation of General Statutes § 21a-279 (a)[1]
and reckless driving in violation of General Statutes
§ 14-222.[2] The defendant claims that the trial court
(1) improperly permitted the defendant to cross-
examine a state's witness concerning a separate arrest
and improperly prevented rebuttal of this testimony
and (2) improperly instructed the jury concerning fin-
gerprint evidence. We affirm the judgment of the trial
court.[3]

The jury could reasonably have found that on Janu-
ary 22, 1992, the defendant operated a motor vehicle
at ninety miles per hour on I-95 in Westport and, at
that time and place, possessed eight grams of cocaine.
The record shows that the defendant was subsequently
rearrested and charged with failure to appear in the
second degree in violation of General Statutes
§ 53a-173.[4] Prior to the commencement of jury selec-

[1] General Statutes § 21a-279 (a) provides: "Any person who possesses
or has under his control any quantity of any narcotic substance, except as
authorized in this chapter, for a first offense, may be imprisoned not more
than seven years or be fined not more than fifty thousand dollars, or be
both fined and imprisoned; and for a second offense, may be imprisoned
not more than fifteen years or be fined not more than one hundred thou-
sand dollars, or be both fined and imprisoned; and for any subsequent
offense, may be imprisoned not more than twenty-five years or be fined
not more than two hundred fifty thousand dollars, or be both fined and
imprisoned."

[2] General Statutes § 14-222 (a) provides in pertinent part: "The opera-
tion of a motor vehicle upon any such highway, road or parking area for
ten cars or more at a rate of speed greater than eighty-five miles per hour
shall constitute [reckless driving]."

[3] Appellate counsel was not trial counsel.

[4] General Statutes § 53a-173 (a) provides: "A person is guilty of failure
to appear in the second degree when, while charged with the commission
of a misdemeanor or a motor vehicle violation for which a sentence to a

tion, the trial court granted the defendant's motion to sever the failure to appear charge.[5]

Trooper Joseph Marchio of the state police, who made the original arrest, was being crossed-examined by defense counsel when the following colloquy took place.

"[Defense Counsel]: That's an appropriate bond for narcotics, and did he raise the bond?

"[Marchio]: I'd have to look at the paperwork if he made bond or not. I think he did.

"Q. He's here, so obviously he made the bond?

"A. Yes.

"Q. *Did you have any other discussions with him about this case?*

"A. About what, sir?

"Q. About this case?

"A. *I arrested him after for a charge of failure to appear in court* . . . .

"[The Court]: *Let's go on to another area now.*

"[Defense Counsel]: You arrested him for a failure to appear in court?

"[Marchio]: Yes, sir.

"Q. Do you know whether or not he appeared in court that day?

---

term of imprisonment may be imposed and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear."

[5] The record does not disclose why the defendant was charged with failure to appear in the second degree rather than failure to appear in the first degree, which is appropriate for failure to appear when charged with a felony. Possession of narcotics is a felony. At any rate, the failure to appear charge was later nolled by the state.

"A. No, sir. He had a warrant for his arrest after for not appearing in court.

"Q. Do you know when that was?

"A. Not the exact date and time. No, sir.

"[The Court]: *I really want to stop you from getting into that area unless you insist on doing that. I plan to tell the jury to totally disregard that, unless you insist on getting into that area.*

"[Defense Counsel]: Frankly—

"[The Court]: *I tried to stop it.*

"[Defense Counsel]: I know. *I appreciate that,* but I don't think I can—

"[The Court]: *Do what you have to do.*

"[Defense Counsel]: Thank you.

"Q. Officer, I would ask you to look at your file, look at whatever you have to look at just to refresh your recollection when Mr. Youdin allegedly failed to appear in court, okay?

"A. I don't have anything in front of me, sir, that would indicate when he failed to appear.

"Q. I'll show you something. Showing you this document, and you may not be familiar with this because it is a court document, but does this refresh your recollection perhaps if you know when he was alleged to have not appeared in court, what date?

"A. Let me see that, sir?

"[The Court]: If you can't interpret that document, don't guess at it, okay?

"A. Yes, sir. I'm not going to guess at it then, sir. I'm not going to guess at it.

"Q. In September of last year who was the commissioner of the state police?

"A. Commissioner Cioffi.

"Q. Who was the commissioner of state police before Commissioner Cioffi?

"[The State]: Objection, Your Honor, relevance.

"[Defense Counsel]: *I'm claiming, Your Honor, subject to—*

"[The Court]: *If you can tie it in, I'll let you do it.*

"Q. This is not going much further; who is the commissioner of the state police?

"A. Sullivan.

"Q. And who is the chief state's attorney?

"A. I'm not sure.

"Q: *Do you know the disposition of the offense that Mr. Youdin [was] subsequently arrested for, a failure to appear in court?*

"A. No, sir. *In terms of—I arrested him on a warrant. Fairfield had stopped him. We had a warrant for his arrest for a failure to appear.*

"Q. *You arrested him on the charge of failure to appear in court in this case, did you not?*

"A. *Yes, sir.*

"Q. Okay, *and you told us in answer to my questions* as to whether or not you had any further discussion with him about this case, *isn't that the question that I asked that prompted you to tell us that you arrested him for failure to appear in court?*

"A. Yes, sir.

"Q. *Do you think that your answer to me was responsive?*

"A. Responsive, sir?

"Q. Yes, is that what you were trying to tell us as to whether or not you had any further discussion about this case?

"A. *You asked me. You said, after that date did you have any—*

"Q. No. I said did you have any further discussions about this case?

"A. I thought you took it after that date.

"Q. *You don't think it's important that the jury should know that you arrested him for failing to appear in court?*

"A. *No, Sir. You asked me a question and I answered.*

"Q. Are you aware that he has appeared in this court forty-two different times?

"A. No, I am not, sir.

"Q. Would it surprise you?

"A. No, sir.

"Q. Are you aware that he has in fact written to the chief state's attorney to have his case heard as soon as possible?

"[The State]: Objection, Your Honor.

"[The Court]: Sustained, I'm not going to allow it.

"[The State]: *I don't believe the defense attorney has tied this together, so anything that you find that isn't relevant I ask that that be stricken.*

"[Defense Counsel]: The only question, Your Honor, that I am asking the jury to take note of is who was the chief state's attorney at the time.

"[The Court]: *How are you going to tie it in about the failure to appear in this instance?*

"[Defense Counsel]: *Well, I'll have to address that when Mr. Youdin takes the stand, Your Honor.*

"[The Court]: *I'll instruct the jury to disregard that testimony.*" (Emphasis added.)

The defendant testified on his own behalf during which the following colloquy took place.

"[Defense Counsel]: You heard Trooper Marchio tell us that you had been arrested for failure to appear in this case. *Were you arrested for failure to appear in this case?*

"[The Defendant]: Yes sir, I was.

"Q. And when were you arrested for failing to appear in this case? And if you want to use notes, be my guest.

"A. Well, uh—

"[The State]: Your Honor, I'd object. *I don't know how this is relevant to anything that's before the court in this instance.*

"[The Court]: Mr. Sherman?

"[Defense Counsel]: Well, I unfortunately have to claim it, Your Honor. Trooper Marchio's the one who picked up a big glob of mud and threw it on the wall. And now it's incumbent on me to obliterate it as best I can. *I never brought it out.*

"[The Court]: *You brought it out, though.*

"[Defense Counsel]: Excuse me, Your Honor?

"[The Court]: *You forced it out.*

"[Defense Counsel]: Oh, I don't think so.

"[The Court]: I don't mean that you did so intentionally, but it seems to me that you put some water on the dirt, and made it mud.

"[Defense Counsel]: No, and I—I strongly, respectfully disagree with the court. When I asked Trooper Marchio a question having nothing to do with anything, he is the one who said, 'Yes, that's when I arrested him for failure to appear in court.'

"[The Court]: *What's that have to do with this case then, at any rate?*

"[Defense Counsel]: Well, the jury has now been made aware that he's been arrested for failure to appear in court, which would seem to be some type of contempt—

"[The State]: Your Honor?

"[Defense Counsel]: —Marchio—and I think I'm entitled at this point to clear up [the] matter for the jury and explain why he was a failure to appear.

"[The Court]: Okay. What do you want to say?

"[The State]: Can we excuse the jury so we can talk?

"[The Court]: Excuse the jury, please." (Emphasis added.)

The state argued to the trial court that defense counsel was opening the door to the failure to appear charge, which had been severed at his request, and that, if he continued to do so, the state should be allowed to reinstate the failure to appear charge. No formal motion to reinstate the charge was made and that charge was never brought back into the case.

The defendant made an offer of proof, out of the presence of the jury, that pertained solely to the severed failure to appear charge. The state objected on relevancy grounds. Defense counsel argued that the evidence was necessary to rebut the prejudicial effect of Marchio's testimony.

The trial court ruled that the subject of the offer of proof was not relevant to either of the charges for which the defendant was on trial. When the jury returned, the court instructed it to disregard all reference to the failure to appear charge[6] and reemphasized this point as part of its final jury instruction.[7]

Facts relating to the fingerprint claim will be discussed with the analysis of that issue.

## I

The defendant first claims that the trial court improperly interfered with his right to present a defense and also interfered with his decision to testify in his own behalf (1) by permitting him to explore evidence of the severed failure to appear charge on cross-examination of a state's witness and (2) by not permitting him to introduce evidence pertaining to that crime as part of his own case.

The genesis of this problem was the cross-examination of Marchio when he was asked: "Did you have any other discussions with [the defendant] about this case?" Apparently, defense counsel was referring to other discussions that may have taken place at the time the defendant was being processed on the original arrest. Marchio, however, misinterpreted the question and started to reply, "I arrested him after for a charge of failure to appear in court . . . ." The trial court immediately interrupted Marchio, ordering, "Let's go on to another area now."

---

[6] "Thank you. Ladies and gentlemen, there's been reference to failure to appear in connection with this case. *That has absolutely nothing to do with you. You are not to consider any remarks made regarding the failure to appear. That is an issue that is absolutely not before you. Please disregard any and all reference to such a situation because that is not before you at all. Okay."* (Emphasis added.)

[7] "Any testimony which has been ordered to be stricken from the record, *which I told you to disregard, is not evidence . . . . You are to decide the case solely on the evidence which has been received at trial."* (Emphasis added.)

The defendant persisted, however, in going into the failure to appear charge despite continued efforts by the trial court to deter him. On appeal, the defendant relied on the timeworn cliche, "You can't unring the bell." This truism is well taken when extensive and critical prejudicial testimony is unexpectedly exposed to the jury. Not every inadvertent word or expression, however, comes within the ambit of the saying. In the present case, Marchio's inadvertent remark barely tinkled the proverbial bell. It was the defendant who grabbed the bell rope and swung on it, causing the bell to peal over and over again. Any prejudice resulting from the repeated reference to the failure to appear charge was self-induced and, if not the result of the defendant's opening the door, was the consequence of the defendant's taking a door that was barely ajar and forcing it wide open. *State* v. *Hernandez*, 224 Conn. 196, 206, 618 A.2d 494 (1992). " 'Action induced by an appellant cannot ordinarily be ground of error.' . . ." (Citations omitted.) *State* v. *Harrison*, 34 Conn. App. 473, 488, 642 A.2d 36, cert. denied, 231 Conn. 907, 648 A.2d 157 (1994).

Furthermore, any possible prejudice that might be claimed was eliminated by the trial court's limiting instruction, repeated in its final jury charge. Absent evidence to the contrary, the jury is presumed to have followed the court's instruction to disregard all references to the failure to appear charge. *State* v. *Negron*, 221 Conn. 315, 331, 603 A.2d 1138 (1992). "Such curative instructions are entitled to great weight and ordinarily prevent an appellate court from finding that the trial court committed reversible error. . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Harris*, 28 Conn. App. 474, 481, 612 A.2d 123, cert. denied, 223 Conn. 926, 614 A.2d 828 (1992). A limiting instruction was an adequate remedy in this case.

The defendant's attempt to undo the benefit of the limiting instruction cannot be laid at the door of the trial court.

Because the defendant's offer of proof contained no evidence relevant to the charges for which the defendant was on trial, the trial court properly refused to allow it to be presented to the jury.

In the final aspect of this claim, the defendant contends that the trial court's "invitation" to defense counsel to "[d]o what you have to do" interfered with his decision on whether to take the stand and testify or to exercise his constitutional right not to testify. The record is devoid of testimony or trial court findings showing that the defendant's decision resulted from Marchio's partial answer or the court's subsequent action. This claim is supported only by representations of appellate counsel. Representations and arguments of counsel are not evidence. *State* v. *O'Brien*, 29 Conn. App. 724, 732, 618 A.2d 50, cert. denied, 225 Conn. 902, 621 A.2d 285 (1993).

It is the appellant's burden to furnish an adequate record. Practice Book § 4061;[8] *deFur* v. *deFur*, 37 Conn. App. 450, 451–52, 656 A.2d 703 (1995); *Gallant* v. *Esposito*, 36 Conn. App. 794, 797, 654 A.2d 380 (1995). " 'If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, [this court] will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim.' " *State* v. *O'Brien*, supra, 29 Conn. App. 732, quoting *State* v. *Golding*, 213 Conn. 233, 240, 567 A.2d 823 (1989). We decline to review this aspect of the first claim.

---

[8] Practice Book § 4061 provides in relevant part: "It is the responsibility of the appellant to provide an adequate record for review."

## II

The defendant also claims that the trial court improperly instructed the jury concerning fingerprint evidence.

On the night of the arrest, Marchio seized a plastic bag that was in plain view on the front seat. The bag's contents proved to be cocaine. Sergeant Angel Gonzales testified that the police did not fingerprint the package because it was "assumed" to be the defendant's since he was alone in the car, and, under such circumstances, it was not common practice to fingerprint a package suspected of containing narcotics.

At trial, the defendant denied ownership of the drugs and also denied having handled the package. The car was rented, and he claimed that the package fell from above the sun visor as he tried to find the vehicle registration.

During closing argument, the defendant's counsel asked, rhetorically, why the state had not fingerprinted the package. "We could have solved this long ago, I suggest to you, by the fingerprints. We can't do it. They've got to do it." The state did not refute these statements at the time.

During deliberations, the jury asked the question: "Does the accused have the right, or did he have the right to get the cocaine bag fingerprinted and introduced into evidence?" The court answered, "No." The state excepted to this answer, pointing out that pursuant to Practice Book § 741,[9] the defendant had the

---

[9] Practice Book § 741 provides in relevant part: "Upon a written motion made by a defendant within ten days after the entry of a plea, the prosecuting authority, within the time set by the judicial authority, shall disclose in writing the existence of and allow the defendant to inspect, copy,

right to make reasonable tests on the package, so the answer to the jury's question should have been yes.

The defendant objected to a simple affirmative answer because he argued that so many people had handled the package during its processing that it effectively denied him his right to have it fingerprinted. As an alternative, he sought to have the court supplement its affirmative answer with an instruction that the package had been contaminated by having been handled by a number of people. There was no evidence, however, that the bag had become so contaminated that it could not be effectively fingerprinted.

The court refused to go into the testimony and reinstructed the jury that the defendant had a right to test the package and that "the value of [making the tests] is based upon the testimony that you'll have to recall regarding those circumstances of fingerprinting."

The jury then requested: "Please clarify your statement regarding fingerprint[s], particularly the part about prior testimony." The state asserted that the court was limited to telling the jury that it must rely on its recollection of the evidence. The defendant again argued that the court should remind the jury that there had been testimony that many people had touched the package and explain that this meant that any fingerprint testing would have been useless.

The court again refused this request, instead telling the jury, "Ladies and gentlemen, it's your obligation

photograph and have reasonable tests made on any of the following relevant materials . . .

"(2) Books, tangible objects, papers, photographs, or documents obtained from or belonging to the defendant;

"(3) Adequately identified books, tangible objects, papers, photographs, or documents which are within the possession, custody, or control of any governmental agency, and which are material to the preparation of the defense or are intended for use by the prosecuting authority as evidence in chief at the trial . . . ."

to try to recall the testimony in this case to the best of your ability. Your collective memory is what you should use. If there was testimony about fingerprinting that was introduced into evidence, think about that testimony. Try to recall what the testimony was. And that way, you can come to your answer to your own question. If there was testimony regarding fingerprinting, and again, in the context of your question that you asked me, about whether or not he had the right to have the bag fingerprinted, that's for you to decide."[10]

The defendant introduced this issue when he incorrectly argued that the defendant could not fingerprint the package. He cannot now complain about the result of what he brought into the case. Action induced by a party cannot, ordinarily, be ground for error. *State* v. *Walton,* 227 Conn. 32, 67, 630 A.2d 990 (1993); *State* v. *Ross,* 189 Conn. 42, 47, 454 A.2d 266 (1983); *State* v. *Boyd,* 36 Conn. App. 516, 520, 651 A.2d 1313, cert. denied, 232 Conn. 912, 654 A.2d 356 (1995). "The defendant can claim relief from an induced error only upon a showing that the error violated his constitutional rights." *State* v. *Harrison,* supra, 34 Conn. App. 488.

The defendant argues on appeal that the court's instruction shifted the burden to him to prove his innocence and allowed the jury to draw an adverse inference that the defendant's failure to have the package fingerprinted was evidence of guilt. Even if this were true, it would not constitute grounds for overturning the verdict. The trial court repeatedly instructed the jury that the defendant was presumed to be innocent and that the state had the burden of proving each element of the crime beyond a reasonable doubt. We do not consider individual instructions in isolation; rather,

---

[10] The concluding words of the instruction are inexplicably inconsistent with the trial court's other instructions on this subject. The parties do not refer to it, nor shall we. See *Lynch* v. *Granby Holdings, Inc.,* 230 Conn. 95, 99, 644 A.2d 325 (1995).

we consider the jury charge as a whole. *State* v. *Miller,* 36 Conn. App. 506, 511, 651 A.2d 1318, cert. denied, 232 Conn. 912, 654 A.2d 357 (1995). When considered as a whole, the jury instructions did not shift the burden.

The judgment is affirmed.

In this opinion the other judges concurred.