SANDRA SACHS v. JOEL SACHS
(AC 18815)
(AC 19255)

Lavery, Spear and Dupont, Js.[1]

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

338

Argued February 23—officially released October 10, 2000

*Lori Welch-Rubin*, for the appellant (defendant).

*Wesley W. Horton*, with whom were *Kenneth J. Bartschi* and *Jessica A. Ballou*, certified legal intern, and, on the brief, *Susan M. Cormier* and *Richard L. Goldblatt*, for the appellee (plaintiff).

*Opinion*

SPEAR, J. These two appeals arise from a marriage dissolution action. In appeal No. 18815 (pension appeal), the defendant, Joel Sachs, claims that the trial court improperly construed the property award provisions of the parties' dissolution agreement to allow the plaintiff, Sandra Sachs, one third of the defendant's future pension benefits that are attributable solely to the defendant's work after the date of the dissolution. The challenged future pension benefits are one third of all postdissolution deposits made to the defendant's retirement plans and the earnings thereon. In appeal No. 19255 (attorney's fees appeal), the defendant claims

that the trial court improperly awarded attorney's fees to the plaintiff to defend this appeal. We affirm the judgment of the trial court.

The following facts are relevant to the resolution of these appeals. On April 13, 1983, the parties executed a separation agreement (agreement) that the trial court incorporated by reference into the dissolution decree. The parties subsequently filed a series of postjudgment motions seeking to clarify whether the parties intended to divide the defendant's future pension benefits accruing after the court rendered the judgment dissolving the marriage. The defendant filed a motion for order pursuant to paragraph three[2] of the agreement, seeking the entry of a proposed qualified domestic relations order (QDRO) that would have excluded from the agreement all annual contributions made by his employer for his work postdissolution. The plaintiff filed a motion to compel the defendant to draft a QDRO requiring the defendant to pay to the plaintiff one third of his present and future pension benefits in accordance with the agreement that was incorporated into the dissolution decree. The court, after a hearing, ruled that

---

[2] Paragraph three of the agreement provides: "The Husband has accrued and will continue to accrue pension and retirement benefits from Northwestern Mutual Life Insurance Company. It is the intention of the parties that such benefits shall be divided between the Husband and Wife sixty-six and two-thirds (66 2/3%) percent to the Husband thirty-three and one-third (33 1/3%) percent to the Wife. The Husband represents that said benefits are payable to him upon his attaining age sixty-five and that he shall forthwith take all necessary steps, prepare and execute all necessary documents to have one third (1/3) of his vested interest in said benefits present and future transferred to the Wife to be hers absolutely and forever it being understood that one third (1/3) of all benefits whether lump sum or periodic payable to the Husband upon his attaining the age of sixty-five shall be paid and payable directly to the Wife and the Wife agrees to pay the tax consequent on said one third (1/3). It is further understood and agreed that the Husband shall not in any way impair by hypothecating, borrowing against, anticipating or otherwise the benefits accrued or accruing in such pension plan. Such benefits as are payable upon the death of an insured under such plan shall be payable one third (1/3) to the Wife."

the defendant's QDRO did not comply with the April 13, 1983 dissolution judgment. It further ordered the defendant to submit to the plaintiff "appropriate [QDRO's] transferring to the plaintiff one third of his present and future interest in the [pension plan]. Said transfer to include contributions to both plans from date of judgment (4/13/83) to date of retirement."

The facts relevant to the attorney's fees appeal are as follows. The plaintiff moved for attorney's fees to defend the present appeal, requesting a total of $15,000. The plaintiff's appellate counsel required a $10,000 retainer, and her trial counsel required a $5000 retainer to consult on the appeal. The court found that "the defendant was evasive [about] disclosing his financial status, that he has in excess of one million dollars in liquid assets and continues to earn an annual income of approximately $210,000." The court also found that the plaintiff had recently inherited some money, but that it would be significantly diminished after distribution to beneficiaries and after payment for the administration of the estate. Also, the court found that the plaintiff was unemployed. The court ordered the defendant to pay to the plaintiff's appellate counsel the sum of $7500.

I

In the pension appeal, the defendant claims that the court improperly construed the parties' dissolution agreement as providing that the plaintiff was entitled to one third of the defendant's pension benefits that were attributable solely to his work performance after the date of the dissolution. Specifically, the defendant claims that (1) the court's interpretation is contrary to the intent of the parties, as expressed in paragraphs three and twenty of the agreement,[3] to limit all property

[3] Paragraph three is fully set out in footnote 1. Paragraph twenty, entitled "COURT APPROVAL AND MODIFICATION," provides: "Pursuant to the provisions of Sections 46b-66 and 46b-86 of the Connecticut General Statutes, this Agreement shall be submitted to the Court having jurisdiction of any action for dissolution which may be brought by either party and this

awards to that which the court could have ordered pursuant to General Statutes § 46b-81[4] and (2) regardless of the intent of the parties, § 46b-81 does not authorize the court to award the challenged future pension benefits.[5]

## A

"The agreement of the parties executed at the time of the dissolution was incorporated into the judgment

Agreement shall be effective only if approved by the Court and incorporated into the decree of dissolution. If approved by the Court, this Agreement is to be taken as the parties' full expression of the manner in which they would like to have their property and other assets and problems resolved."

[4] General Statutes § 46b-81 provides: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.

"(b) A conveyance made pursuant to the decree shall vest title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court pursuant to the provisions of section 52-500. When the decree is recorded on the land records in the town where the real property is situated, it shall effect the transfer of the title of such real property as if it were a deed of the party or parties.

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

[5] The defendant originally claimed that the court lacked subject matter jurisdiction to award the challenged benefits. During the pendency of this appeal, our Supreme Court clarified the distinction between subject matter jurisdiction and the trial court's authority to act pursuant to a statute. *Amodio* v. *Amodio*, 247 Conn. 724, 724 A.2d 1084 (1999). The defendant recast his claim as a challenge to the court's authority to award the future pension benefits.

and is a contract of the parties. *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999); *Greenburg* v. *Greenburg*, 26 Conn. App. 591, 595, 602 A.2d 1056 (1992). The construction of a contract to ascertain the intent of the parties presents a question of law when the contract or agreement is unambiguous within the four corners of the instrument. *Issler* v. *Issler*, supra, 235. '[T]he construction of a written contract is a question of law for the court.' *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 179, 544 A.2d 1185 (1988); *Sacharko* v. *Center Equities Ltd. Partnership*, 2 Conn. App. 439, 445, 479 A.2d 1219 (1984). The scope of review in such cases is plenary. *Branch* v. *Occhionero*, 239 Conn. 199, 205, 681 A.2d 306 (1996); *Hammond* v. *Commissioner of Correction*, 54 Conn. App. 11, 16, 734 A.2d 571, cert. granted on other grounds, 251 Conn. 919, 742 A.2d 358 (1999). Because our review is plenary, involving a question of law, our standard for review is not the clearly erroneous standard used to review questions of fact found by a trial court. Our review of the parties' agreement is plenary . . . ." *Amodio* v. *Amodio*, 56 Conn. App. 459, 470, 743 A.2d 1135, cert. granted on other grounds, 253 Conn. 910, 754 A.2d 160 (2000) (appeal withdrawn September 27, 2000).

Notwithstanding the plain language of paragraph three of the agreement, the defendant insists on a tortured reading of paragraph twenty of the agreement to support his claim that the parties intended their agreement to be subject to the statutory limitations provided under § 46b-81.

The defendant's basic premise is that the court could not, pursuant to § 46b-81, order that postdissolution contributions to the pension plan be allocated to the parties in the manner that they have done so by agreement. He asserts that implicit in the clause that requires court approval of the agreement is the understanding that the court will limit any property award

to that which the court could have ordered pursuant to § 46b-81. We conclude that the court properly construed the agreement.

Paragraph twenty does not make any express reference to § 46b-81. There is, therefore, no reason to review the distribution of the pension benefits under the agreement pursuant to the authority provided by § 46b-81 for the distribution of property.

Paragraph twenty of the agreement, by its plain language, indicates that the agreement will become effective only upon approval after submission to the court pursuant to § 46b-66. Nowhere does the agreement specifically reference § 46b-81. Furthermore, paragraph twenty states that "[i]f approved by the Court, this agreement is to be taken as the parties' full expression of the manner in which they would like to have their property and other assets and problems resolved."

The court interpreted the agreement provision that defined the distribution of the defendant's pension benefits by looking at the plain language of the agreement. "The interpretation of the agreement is a search for the intent of the parties. . . . This intent must be determined from the language of the instrument and not from any intention either of the parties may have secretly entertained. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Citation omitted; internal quotation marks omitted.) *Champagne* v. *Champagne*, 43 Conn. App. 844, 848, 685 A.2d 1153 (1996).

Several key phrases in the language of paragraph three of the agreement provide clear and unambiguous evidence of the parties intent. First, the language that states that "[t]he husband has accrued and will continue

to accrue pension and retirement benefits," indicates that the agreement covers both the present and *future* accrual of benefits. Second, the agreement states that "[i]t is the intention of the parties that *such benefits* shall be divided between the Husband and Wife . . . ." (Emphasis added.) In this second statement, there was no attempt to distinguish between future and past accruals for direction at the time of the division of the benefits. Third, the agreement further directs the husband to "take all necessary steps, prepare and execute all necessary documents to have one third (1/3) of his vested interest in said benefits *present and future* transferred to the Wife . . . ." (Emphasis added.) This language again refers to future benefits without any attempt to indicate that future contributions are intended to be treated differently. Finally, the agreement refers to the wife's share, and provides that one third of "*all* benefits whether lump sum or periodic payable to the Husband . . . shall be paid and payable directly to the Wife . . . ." (Emphasis added.) This language again fails to make any distinction between present and future contributions of the husband, and more directly indicates an intention to divide *all* of the benefits in the proportions stated in the agreement. The defendant's claim that the court improperly construed the agreement is without merit.

## B

The defendant also makes the claim that the court could not have awarded the future pension benefits pursuant to § 46b-81 because such benefits are not marital property, and, therefore, the court had no power to do so pursuant to the agreement of the parties. Even if we assume, without deciding, that the challenged benefits are not marital property, the defendant cannot prevail.

In 1983, the defendant joined with the plaintiff in requesting the dissolution court to approve the

agreement as fair and equitable and to incorporate it into the dissolution decree. He now asks us to hold that the agreement is unenforceable. "This situation is in the nature of induced error. Actions that are induced by a party ordinarily cannot be grounds for error. . . . A defendant can present a claim of relief from induced error only upon a showing that the error violated his constitutional rights." (Citations omitted; internal quotation marks omitted.) *State* v. *Edwards*, 39 Conn. App. 242, 251, 665 A.2d 611, cert. denied, 235 Conn. 924, 925, 666 A.2d 1186, 1187 (1995); see also *State* v. *Hanks*, 39 Conn App. 333, 344, 665 A.2d 102, cert. denied, 235 Conn. 926, 666 A.2d 1187 (1995); *State* v. *Youdin*, 38 Conn. App. 85, 94, 659 A.2d 728, cert. denied, 234 Conn. 920, 661 A.2d 100 (1995). Because no constitutional violation is claimed here, review of this claim is not warranted.

Moreover, the defendant's initial claim that the court lacked subject matter jurisdiction to enforce the challenged aspect of the agreement is no longer viable.[6] During the pendency of these appeals, our Supreme Court decided *Amodio* v. *Amodio*, 247 Conn. 724, 724 A.2d 1084 (1999), clarifying the distinction between a court's subject matter jurisdiction and its authority to act pursuant to a statute. "General Statutes § 46b-1 (c)[7] provides the Superior Court with plenary and general subject matter jurisdiction over legal disputes in family

---

[6] See footnote 4.

[7] General Statutes § 46b-1 provides in relevant part: "Family relations matters defined. Matters within the jurisdiction of the Superior Court deemed to be family relations matters shall be matters affecting or involving: (1) Dissolution of marriage, contested and uncontested, except dissolution upon conviction of crime as provided in section 46b-47; (2) legal separation; (3) annulment of marriage; (4) alimony, support, custody and change of name incident to dissolution of marriage, legal separation and annulment; (5) actions brought under section 46b-15 . . . and (17) all such other matters within the jurisdiction of the Superior Court concerning children or family relations as may be determined by the judges of said court."

relations matters . . . ." (Internal quotation marks omitted.) Id., 729. General Statutes § 46b-66 provides the court with jurisdiction to incorporate a separation agreement into its order or decree if upon review it finds the agreement fair and equitable under the circumstances. Furthermore, § 46b-81 provides the court with jurisdiction to divide the parties' property. Therefore, the trial court, pursuant to these statutes, had jurisdiction over the claim in this case. Our question is, therefore, whether the court acted within its statutory authority under these statutes in its decision to order the defendant, pursuant to the agreement, to submit a QDRO "transferring to the plaintiff one third of his present and future interest in the [pension plan]." Although it is axiomatic that parties cannot confer subject matter jurisdiction on a court by agreement, appellate review of a court's statutory authority can be precluded, pursuant to the induced error doctrine, where a party to an agreement in the trial court seeks to avoid that agreement, in a situation where the agreement does not violate a constitutional right or public policy. As the defendant concedes, the court has subject matter jurisdiction over property awards in marital dissolution cases and thus had jurisdiction in this case.

II

In the attorney's fees appeal, the defendant claims that the court improperly awarded attorney's fees to the plaintiff to defend the appeal. We disagree.

Buttressing its decision to award $7500 to the plaintiff to defend the appeal, the court found the following facts. "The evidence at trial indicates that the defendant was evasive around disclosing his financial status, that he has in excess of one million dollars in liquid assets and continues to earn an annual income of approximately $210,000. The plaintiff recently inherited some

money but this will be significantly diminished after distribution among the beneficiaries and moneys used for the administration of the estate. Additionally the plaintiff is unemployed." Furthermore, the court specifically indicated that it considered the evidence and General Statutes §§ 46b-62 and 46b-82.[8]

"Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . *Koizim* v. *Koizim*, 181 Conn. 492, 501, 435 A.2d 1030 (1980). An exception to the rule announced in *Koizim* is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine its prior financial orders . . . . *Eslami* v. *Eslami*, 218 Conn. 801, 820, 591 A.2d 411 (1991). Whether to allow counsel fees [under §§ 46b-62 and 46b-82], and if so in what amount, calls for the exercise of judicial discretion. . . . *Holley* v. *Holley*, [194 Conn. 25, 33–34, 478 A.2d 1000 (1984)]. An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court

---

[8] "General Statutes § 46b-62 governs the award of attorney's fees in dissolution proceedings. That section provides in part that 'the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . .' The criteria set forth in § 46b-82 are 'the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment.' In making an award of attorney's fees under this section, '[t]he court is not obligated to make express findings on each of these statutory criteria.' *Weiman* v. *Weiman*, 188 Conn. 232, 234, 449 A.2d 151 (1982)." *Bornemann* v. *Bornemann*, 245 Conn. 508, 542, 752 A.2d 978 (1998).

could not reasonably have concluded as it did. *Unkelbach* v. *McNary*, 244 Conn. 350, 374, 710 A.2d 717 (1998), quoting *Cook* v. *Bieluch*, 32 Conn. App. 537, 544, 629 A.2d 1175, cert. denied, 228 Conn. 910, 635 A.2d 1229 (1993)." (Internal quotation marks omitted.) *Bornemann* v. *Bornemann*, 245 Conn. 508, 543, 752 A.2d 978 (1998).

The defendant first claims that the court's prior denial of attorney's fees to litigate trial court motions acts as a bar to future claims for attorney's fees. The defendant relies on our decision in *Durkin* v. *Durkin*, 43 Conn. App. 659, 685 A.2d 344 (1996), for this proposition. In *Durkin*, we stated that "[i]f an award of attorney's fees was sought in the underlying proceeding from which the appeal is being taken, the ruling on that earlier application may substantially control the result on the later application for attorney's fees on appeal. A. Rutkin, E. Effron & K. Hogan, 8 Connecticut Practice Series: Family Law and Practice (1991) § 44.12, p. 285." (Internal quotation marks omitted.) *Durkin* v. *Durkin*, supra, 664. In *Durkin*, the claim was that the court deprived the defendant of a meaningful hearing on attorney's fees because the defendant was unable to cross-examine the plaintiff on her financial affidavit because she was out of the country at the time of the hearing. We held that the defendant had a sufficient opportunity to cross-examine the plaintiff at an earlier hearing on the same financial affidavit and thus that the court properly relied on a previous hearing in awarding counsel fees to the plaintiff. Id. The factual situation in *Durkin* and its holding are therefore not applicable here.

Furthermore, *Durkin* does not preclude future awards of attorney's fees once a trial court in a prior proceeding rules that no attorney's fees are warranted at that time. This is evident by our choice of the words, "*may* substantially control." (Emphasis added.) Id. Such language is not mandatory. The trial court could

have concluded, therefore, that because the plaintiff was being forced to defend another appeal to enforce its prior judgment, an award of attorney's fees was necessary to prevent the undermining of its previous financial orders.

The defendant next claims that the plaintiff's attempts to introduce evidence to inform the court of the reasonableness of the fees bear on the trial court's abuse of discretion in awarding attorney's fees in this case. General Statutes § 46b-62 governs orders for the payment of attorney's fees and provides in relevant part that "the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82."

The defendant claims that his due process rights were violated because the plaintiff's motion sought $10,000 for her appellate attorney's fees, but the trial court allowed her to testify that her attorney estimated the fees for the appeal to be "in the range of about twenty-five thousand—[dollars]." The defendant's objection to this testimony as hearsay was overruled. This argument is factually flawed. First, the motion for attorney's fees sought $15,000 to defend the appeal. That the plaintiff testified that her anticipated cost of appeal would exceed the requested $15,000 is of no moment. The defendant, by the stated relief sought in the motion, was on notice that he faced a liability of only $15,000. Furthermore, the court awarded only $7500 in attorney's fees. We fail, therefore, to see how the defendant's due process rights could have been violated.

The defendant also claims that it was an abuse of discretion for the court to award attorney's fees because the plaintiff had already paid the $10,000 retainer to her appellate counsel, and therefore the plaintiff was actually seeking a reimbursement. Because attorney's

fees may be awarded even where both parties are financially able to pay their own fees; *Eslami* v. *Eslami*, supra, 218 Conn. 820; we find that the court did not abuse its discretion in awarding fees in this case.

The judgment is affirmed.

In this opinion the other judges concurred.