******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## SUSAN F. GAINTY *v.* MICHAEL INFANTINO
## (AC 47887)

Cradle, C. J., and Moll and Seeley, Js.

*Syllabus*

The defendant appealed from the trial court's judgment affirming a family support magistrate's decision ordering him to pay overdue child support to the plaintiff and granting the plaintiff's motions for appellate attorney's fees and for contempt. The defendant claimed, inter alia, that the court improperly affirmed the magistrate's decision. *Held*:

The trial court properly affirmed the magistrate's decision, as the magistrate's finding underlying the decision regarding the balance in overdue child support owed by the defendant was not clearly erroneous.

The trial court did not abuse its discretion in granting the plaintiff's motion for appellate attorney's fees, as the court's finding that rejecting the plaintiff's request for such fees would undermine the court's prior financial orders and lead to an inequitable result was sufficient to justify the award.

The trial court properly granted the plaintiff's motion for contempt, as the defendant's claim that the decision underlying the motion conflicted with two prior orders and, thus, was not clear and unambiguous was unavailing.

Argued January 21—officially released May 5, 2026

*Procedural History*

Action to establish paternity of the plaintiff's minor children, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Prestley, J.*; judgment declaring that the defendant is the father of the plaintiff's minor children and granting certain other relief; thereafter, the family support magistrate, David A. Dee, issued a certain order relating to a postjudgment motion for contempt filed by the plaintiff; subsequently, the defendant appealed to the court, *Alfano, J.*; judgment affirming the order of the family support magistrate and granting the plaintiff's motions for attorney's fees and for contempt and awarding attorney's fees to the plaintiff, from which the defendant appealed to this court. *Affirmed.*

*John F. Morris*, for the appellant (defendant).

*Campbell D. Barrett*, with whom was *Stacie L. Provencher*, for the appellee (plaintiff).

*Opinion*

MOLL, J. The defendant, Michael Infantino, appeals from the judgment of the trial court affirming a family support magistrate's decision ordering him to pay over-due child support to the plaintiff, Susan F. Gainty, and granting the plaintiff's motions for appellate attorney's fees and for contempt. On appeal, the defendant claims that the court improperly **(1)** affirmed the magistrate's decision because the magistrate clearly erred in finding that he owed a balance of $5574.58 in overdue child sup-port, **(2)** awarded appellate attorney's fees to the plaintiff in connection with a prior appeal, and **(3)** determined that the decision underlying the contempt finding against him was clear and unambiguous. We affirm the judgment of the trial court.

The following procedural history is relevant to our resolution of this appeal. In 2001, the plaintiff filed a petition to establish the paternity of the parties' son, born in 1998, and daughter, born in 2001. On May 16, 2001, the trial court, *Prestley, J.*, rendered a judgment of paternity against the defendant as to both children and ordered him to pay $250 per week in child support. Additionally, the parties agreed that the defendant was responsible for 50 percent of daycare and medical expenses.[1]

In June, 2008, the parties began engaging in postjudg-ment litigation stemming from the defendant's failure to

---

[1] As this court explained in a prior opinion, "[t]he transcript of the hearing in the action to establish paternity . . . reflects that the [trial] court intended to order the defendant to pay 50 percent of daycare and medical expenses and that the parties had agreed to these orders. . . . Although the order regarding daycare and medical expenses appears to have been inadvertently omitted from the written order, the parties, at all relevant times in this litigation, have operated under the under-standing that the daycare and medical expenses were ordered as stated in the transcript." *Gainty* v. *Infantino*, 222 Conn. App. 785, 789 n.2, 306 A.3d 1171 (2023), cert. denied, 348 Conn. 948, 308 A.3d 36 (2024).

comply with the court's child support orders. The defendant was found in contempt on several occasions prior to the start of the proceedings relevant to this appeal.

On December 11, 2019, the plaintiff, representing herself, filed a motion captioned "motion for order for extension of child support order, education, medical, dependent care expenses through age twenty-one for a child with a qualified disability." The plaintiff requested that the court enter an order extending "child support, education support, medical, [and] dependent care" for the parties' daughter until she turned twenty-one on the ground that she had a qualifying disability. On December 17, 2019, the plaintiff, again representing herself, filed a motion for modification of child support, asserting that the daughter "ha[d] a qualifying disability and [was] eligible for support through the maximum age allowed by state statute (twenty-one)" and that there were "[s]ignificant expenses for care, support, [and] needed services." As relief, the plaintiff requested, inter alia, that the court "[o]rder current support" and require the defendant to "[c]ontribute to child care/support programs," as well as to "[e]xpenses pertaining to services, care, programs, education, [and] medical expenses."

On April 28, 2022, the court, *Hon. Constance L. Epstein*, judge trial referee, issued a memorandum of decision concluding that the plaintiff had satisfied her burden pursuant to General Statutes (Rev. to 2019) § 46b-84 (c)[2] (April 28, 2022 decision).[3]

[2]General Statutes (Rev. to 2019) § 46b-84 (c) provides: "The court may make appropriate orders of support of any child with intellectual disability, as defined in section 1-1g, or a mental disability or physical disability, as defined in subdivision (15) of section 46a-51, who resides with a parent and is principally dependent upon such parent for maintenance until such child attains the age of twenty-one. The child support guidelines established pursuant to section 46b-215a shall not apply to orders entered under this subsection. The provisions of this subsection shall apply only in cases where the decree of dissolution of marriage, legal separation or annulment is entered on or after October 1, 1997, or where the initial support orders in actions not claiming any such decree are entered on or after October 1, 1997."

All references in this opinion to § 46b-84 are to the 2019 revision of the statute.

[3]On August 25, 2022, the court issued a corrected memorandum of decision to correct typographical errors in the April 28, 2022 decision.

The court awarded the plaintiff $31,200 in postmajority child support, constituting the sum of $300 per week from January 24, 2020, to January 24, 2022, which the defendant was ordered to pay to the plaintiff in four installments of $7800 by May 30, July 25, September 26 and November 28, 2022. The court also awarded the plaintiff $683.10, which, as the defendant stipulated, constituted overdue premajority obligations and which was due immediately. Additionally, the court awarded the plaintiff 50 percent of medical and school expenses that she had paid for the parties' daughter up to January 25, 2022, the amount of which would be determined later. On May 11, 2022, the court issued a supplemental memorandum of decision awarding the plaintiff $44,651.78 in medical and school expenses, which the defendant was ordered to pay by January 25, 2023 (May 11, 2022 decision). On May 19, 2022, the defendant appealed from the April 28, 2022 decision and the May 11, 2022 decision (2022 appeal). On July 8, 2022, the plaintiff filed a motion for appellate attorney's fees vis-à-vis the 2022 appeal, which the court granted on August 25, 2022, awarding the plaintiff $10,000. Thereafter, the defendant amended the 2022 appeal to encompass the court's $10,000 appellate attorney's fees award.

On October 19, 2022, while the 2022 appeal remained pending, the plaintiff, represented by counsel by that time, filed a motion for contempt, claiming that the defendant had failed to make the payments ordered in the April 28, 2022 decision. The plaintiff requested attorney's fees in connection with the October 19, 2022 contempt motion. On November 16, 2022, the family support magistrate, David A. Dee, found the defendant in contempt of the April 28, 2022 decision and ordered a purge amount of $24,083.10. On January 25, 2023, the magistrate again found the defendant in contempt and committed him to the Commissioner of Correction with a $10,000 release amount and a review date of February 1, 2023. On February 1, 2023, the magistrate issued a decision finding that (1) the purge amount had been reduced to $14,083.10, following a $10,000 payment

For ease of reference, we refer to the April 28, 2022 decision as the operative decision.

by the defendant, and **(2)** the updated balance that the defendant owed pursuant to the April 28, 2022 decision, inclusive of the reduced purge amount, was $22,566.10, which the magistrate ordered the defendant to pay in four installments of $5641.52 by April 5, June 7, August 2 and October 4, 2023 (February 1, 2023 decision). On February 23, 2023, the magistrate awarded the plaintiff $1000 in attorney's fees in connection with the October 19, 2022 contempt motion.

On September 15, 2023, the plaintiff filed a motion for contempt, claiming that the defendant had failed to make the payments ordered in the February 1, 2023 decision. The plaintiff requested attorney's fees attendant to the September 15, 2023 contempt motion. On October 18, 2023, the magistrate held an evidentiary hearing on the September 15, 2023 contempt motion. On October 26, 2023, the magistrate issued a decision **(1)** noting that he had made a finding on February 1, 2023, that the defendant owed a balance of $22,566.10[4] under the April 28, 2022 decision, and **(2)** finding that, after crediting the defendant for payments remitted between February 1 and October 18, 2023, the defendant owed a new balance of $5574.58, which the magistrate ordered him to pay in four monthly installments beginning on December 1, 2023 (October 26, 2023 decision).[5] On November 1, 2023, the magistrate awarded the plaintiff $1000 in attorney's fees with respect to the September 15, 2023 contempt motion. On November 9, 2023, pursuant to General Statutes § 46b-231 (n),[6] the defendant appealed from the October 26, 2023 decision to the Superior Court.

[4] The October 26, 2023 decision states that the balance that the magistrate found on February 1, 2023, was $22,566, rather than $22,566.10. We deem this to be a scrivener's error.

[5] On October 18, 2023, the magistrate issued a decision finding that the defendant's payments satisfied the $14,083.10 purge amount with regard to the plaintiff's October 19, 2022 contempt motion, thereby concluding the proceedings as to that motion.

[6] General Statutes § 46b-231 (n) provides in relevant part: "(1) A person who is aggrieved by a final decision of a family support magistrate is entitled to judicial review by way of appeal under this section.

"(2) Proceedings for such appeal shall be instituted by filing a petition in superior court for the judicial district in which the decision of the

Meanwhile, on December 12, 2023, this court released its decision in the 2022 appeal, which affirmed the April 28, 2022 decision, the May 11, 2022 decision, and the August 25, 2022 award of $10,000 in appellate attorney's fees to the plaintiff. *Gainty* v. *Infantino*, 222 Conn. App. 785, 810, 306 A.3d 1171 (2023), cert. denied, 348 Conn. 948, 308 A.3d 36 (2024). On January 2, 2024, the defendant filed a petition for certification to appeal to our Supreme Court. On January 11, 2024, the plaintiff filed an opposition to the petition. On January 24, 2024, the plaintiff filed with the trial court a motion for appellate attorney's fees to defend against the petition. On January 30, 2024, our Supreme Court denied the petition.

On April 3, 2024, the plaintiff filed a motion for contempt, claiming that the defendant had failed to pay (1) the $10,000 in appellate attorney's fees awarded by the court on August 25, 2022, (2) the $44,651.78 in medical and school expenses awarded by the court in the May 11, 2022 decision, (3) the $1000 in attorney's fees awarded by the magistrate on February 23, 2023, and (4) the $1000 in attorney's fees awarded by the magistrate on November 1, 2023. The plaintiff requested attorney's fees in connection with the April 3, 2024 contempt motion.

On July 18, 2024, the court, *Alfano*, *J.*, adjudicated the defendant's appeal from the October 26, 2023 decision

family support magistrate was rendered not later than fourteen days after filing of the final decision with an assistant clerk assigned to the Family Support Magistrate Division or, if a rehearing is requested, not later than fourteen days after filing of the notice of the decision thereon. . . ."

Additionally, General Statutes § 46b-231 (o) provides: "Upon final determination of any appeal from a decision of a family support magistrate by the Superior Court, there shall be no right to further review except to the Appellate Court. The procedure on such appeal to the Appellate Court shall, except as otherwise provided herein, be in accordance with the procedures provided by rule or law for the appeal of judgments rendered by the Superior Court unless modified by rule of the judges of the Appellate Court. There shall be no right to further review except to the Supreme Court pursuant to the provisions of section 51-197f."

Section 46b-231 was amended by No. 25-168, § 51, of the 2025 Public Acts, which made changes to the statute that are not relevant to this appeal. Accordingly, all references in this opinion to § 46b-231 are to the current revision of the statute.

and the plaintiff's pending motions. First, the court affirmed the October 26, 2023 decision. Second, the court granted the plaintiff's January 24, 2024 motion for appellate attorney's fees, awarding her $3500. Third, the court granted the plaintiff's April 3, 2024 contempt motion, finding the defendant in contempt of the decisions identified by the plaintiff and ordering him to pay the plaintiff $56,651, which was to be paid in minimum monthly installments of $2360.46, with the failure to make regular monthly payments resulting in a monthly penalty of $200. The court also awarded the plaintiff $1000 in attorney's fees with regard to the April 3, 2024 contempt motion. This appeal followed. Additional procedural history will be set forth as necessary.

I

The defendant first claims that the trial court improperly affirmed the October 26, 2023 decision. The defendant contends that the evidence before the family support magistrate and the court did not support the finding in the October 26, 2023 decision that he owed a $5574.58 balance pursuant to the April 28, 2022 decision. We disagree.

We begin by setting forth the following relevant legal principles and standard of review. "Our legislature has defined the role of the Superior Court in hearing an appeal from a family support magistrate: 'The Superior Court may affirm the decision of the family support magistrate or remand the case for further proceedings. The Superior Court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the decision of the family support magistrate is: (A) In violation of constitutional or statutory provisions; (B) in excess of the statutory authority of the family support magistrate; (C) made upon unlawful procedure; (D) affected by other error of law; (E) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.' General Statutes § 46b-231 (n)

(7)." *Shear* v. *Shear*, 194 Conn. App. 351, 357 n.5, 221 A.3d 450 (2019).

"The trier of fact's determination of a question of fact will not be overturned unless it is clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Under the clearly erroneous standard of review, a finding of fact must stand if, on the basis of the evidence before the [trier of fact] and the reasonable inferences to be drawn from that evidence, a trier of fact reasonably could have found as it did. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [trier of fact] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the [trier of fact's] ruling." (Citation omitted; internal quotation marks omitted.) *Giglio* v. *Ardohain*, 233 Conn. App. 743, 752, 341 A.3d 272 (2025).

The following procedural background is relevant to our resolution of the defendant's claim. In the April 28, 2022 decision, the trial court, *Hon. Constance L. Epstein*, judge trial referee, ordered the defendant to pay the plaintiff a total of $31,883.10, comprising (1) $31,200 in postmajority child support, which was to be paid in four installments of $7800 on May 30, July 25, September 26 and November 28, 2022, and (2) $683.10 in overdue premajority obligations, which was to be paid immediately. This court subsequently affirmed the April 28, 2022 decision. *Gainty* v. *Infantino*, supra, 222 Conn. App. 810. On November 16, 2022, the magistrate found the defendant in contempt of the April 28, 2022 decision and ordered a purge amount of $24,083.10.[7]

In the February 1, 2023 decision, the magistrate found that (1) the purge amount had been reduced to

---

[7] The $24,083.10 purge amount constituted the sum of several payments ordered in the April 28, 2022 decision, namely, (1) the three

$14,083.10, taking into account a $10,000 payment made by the defendant, and **(2)** the updated balance that the defendant owed pursuant to the April 28, 2022 decision, inclusive of the reduced purge amount, was $22,566.10, which the magistrate ordered the defendant to pay in four installments.[8]  The defendant did not appeal from the February 1, 2023 decision.

The parties, as well as a support enforcement services (SES) officer, appeared before the magistrate at the October 18, 2023 evidentiary hearing on the plaintiff's September 15, 2023 contempt motion, which was predicated on the defendant's failure to comply with the February 1, 2023 decision.  The SES officer notified the magistrate that, according to SES records, the defendant had made $16,991.52 in payments since February 1, 2023, leaving $5574.58 left to be paid of the $22,566.10 balance previously found by the magistrate.  The defendant's counsel disagreed, arguing that the defendant **(1)** had paid, if not overpaid, his obligations under the April 28, 2022 decision or, alternatively, **(2)** owed a balance that was less

---

$7800 payments due by May 30, July 25 and September 26, 2022, and (2) the $683.10 payment due immediately.  The fourth $7800 payment mandated by the April 28, 2022 decision was not due until November 28, 2022, which had not yet elapsed at the time of the magistrate's November 16, 2022 decision.

[8] Between the magistrate's November 16, 2022 decision and the February 1, 2023 decision, the fourth $7800 payment ordered in the April 28, 2022 decision became due.  At the time of the February 1, 2023 decision, then, the balance owed by the defendant under the April 28, 2022 decision was $21,883.10, calculated by adding $7800 (the fourth payment ordered in the April 28, 2022 decision) to $14,083.10 (the reduced purge amount), or, alternatively, by subtracting $10,000 (the defendant's payment that preceded the February 1, 2023 decision) from $31,883.10 (the total sum awarded in the April 28, 2022 decision).  The difference between $22,566.10 (the balance found by the magistrate in the February 1, 2023 decision) and $21,883.10 is $683, which approximates the amount of overdue premajority obligations awarded to the plaintiff in the April 28, 2022 decision.  Thus, it appears that the magistrate may have miscalculated the balance in the February 1, 2023 decision by adding twice the amount of overdue premajority child support.  Nevertheless, as we note later in this opinion, the defendant did not appeal from the February 1, 2023 decision, thereby leaving undisturbed the magistrate's finding of a $22,566.10 balance at that time.

than $5574.58. The parties did not offer testimony at the hearing; however, the magistrate admitted in full two exhibits: (1) an SES payment statement listing payments made by the defendant between February 1 and October 18, 2023; and (2) an SES audit explaining the basis of the $5574.58 balance reflected in the SES records (SES audit). In the October 26, 2023 decision, after crediting the defendant for his payments made since February 1, 2023, the magistrate found that he owed a new balance of $5574.58 and ordered payment of the same.

On June 28, 2024, the court, *Alfano*, *J.*, held an evidentiary hearing on the defendant's appeal from the October 26, 2023 decision.[9] The court heard testimony from the parties and admitted in full the following exhibits: (1) the SES audit; (2) an SES payment statement listing payments made by the defendant between January 1, 2000, and June 20, 2023;[10] (3) an SES payment statement listing payments made by the defendant between January 1 and October 18, 2023; and (4) a document summarizing the defendant's payments, which the defendant's counsel had prepared as an aid to the court.

On July 18, 2024, the court affirmed the October 26, 2023 decision. The court stated that "[t]he defendant's argument rests upon his conclusion that the accounting and math provided to the [magistrate] by [SES] in October of 2023, and upon which the magistrate relied in making his decision, is inaccurate. The plaintiff disagrees. . . . Upon extensive review of the voluminous pleadings and exhibits and in light of the testimony provided, the court does not conclude that the . . . magistrate acted in violation of [§] 46b-231 (n) (7)."

---

[9] General Statutes § 46b-231 (n) (6) provides: "The appeal shall be conducted by the Superior Court without a jury and shall be confined to the record and such additional evidence as the Superior Court has permitted to be introduced. The Superior Court, upon request, shall hear oral argument and receive written briefs."

[10] Although January 1, 2000, is shown as the start date for this SES payment statement, the first payment date listed in the statement is January 17, 2008.

The defendant claims that the court improperly affirmed the October 26, 2023 decision because the finding therein that he owed a balance of $5574.58 pursuant to the April 28, 2022 decision was clearly erroneous. According to the defendant, the record demonstrates that he paid, or overpaid, the sum awarded to the plaintiff in the April 28, 2022 decision, or, alternatively, the balance that he owed was less than $5574.58. We are not persuaded.

Initially, we note that the defendant's claim relies in part on evidence of payments that he made predating the magistrate's finding in the February 1, 2023 decision that he owed a balance of $22,566.10 at that time. We reject the defendant's reliance on such evidence. The October 26, 2023 decision, from which the defendant appealed to the Superior Court, addressed the plaintiff's September 15, 2023 contempt motion, which claimed that the defendant had not complied with the February 1, 2023 decision ordering him to pay the $22,566.10 balance. The defendant did not appeal from the February 1, 2023 decision, and, therefore, in the context of the ensuing contempt proceeding, he was precluded from challenging the magistrate's finding of a $22,566.10 balance in the February 1, 2023 decision. See *Tatro* v. *Tatro*, 24 Conn. App. 180, 187–88, 587 A.2d 154 (1991) ("A contempt proceeding does not allow reconsideration of the legal and factual bases of the order alleged to have been disobeyed, which would amount to a retrying of the original controversy. . . . The standard of review of contempt proceedings precludes a collateral attack on the validity of the underlying order . . . ." (Citation omitted; internal quotation marks omitted.)). Thus, insofar as the defendant asserts on appeal any error predicated on the failure to account for payments that he made *prior* to the February 1, 2023 decision, which, if credited to him, necessarily would function to undermine the magistrate's finding that a $22,566.10 balance existed on February 1, 2023, we decline to consider that assertion because it amounts to an impermissible collateral attack on the February 1, 2023 decision.

Focusing our attention on the evidence in the record regarding the defendant's payments remitted after the

February 1, 2023 decision, we conclude that the record supports the finding in the October 26, 2023 decision that the defendant owed a balance of $5574.58 pursuant to the April 28, 2022 decision. The SES audit and the two SES payment statements in the record delineating payments during the relevant time frame reflect that the defendant made $16,991.52 in payments between February 1 and October 18, 2023.[11] The difference between the $22,566.10 balance found by the magistrate on February 1, 2023, and the $16,991.52 in payments that the defendant subsequently remitted is $5574.58, which matches the amount found by the magistrate in the October 26, 2023 decision.

In sum, we conclude that the magistrate's finding in the October 26, 2023 decision that the defendant owed a $5574.58 balance vis-à-vis the April 28, 2022 decision was not clearly erroneous, and, therefore, the court properly affirmed the October 26, 2023 decision.

II

The defendant next claims that the trial court improperly granted the plaintiff's January 24, 2024 motion for appellate attorney's fees to defend against the defendant's petition for certification to appeal from this court's decision in *Gainty* v. *Infantino*, supra, 222 Conn. App. 785, to our Supreme Court (petition).[12] We are not persuaded.

---

[11] We note that the SES payment statements in the record include an entry, dated February 8, 2023, reflecting a $10,000 payment by the defendant. During the October 18, 2023 evidentiary hearing before the magistrate, the SES officer represented that the February 8, 2023 entry constituted the defendant's $10,000 payment to be released from incarceration prior to the February 1, 2023 decision, meaning that said payment was not made on February 8, 2023. Moreover, in the October 26, 2023 decision, the magistrate expressly stated that he had credited the defendant's $10,000 payment when calculating the $22,566.10 balance found in the February 1, 2023 decision. Thus, the $5574.58 balance found in the October 26, 2023 decision accounted for the defendant's $10,000 payment.

[12] The defendant claims that the court "erred by ordering [him] to pay the plaintiff's fees for the . . . petition *and for the motion*"; (emphasis added); and further makes a general reference to the court "err[ing] in its *orders* of attorney's fees." (Emphasis added.) The only claim of error

We first set forth the following applicable legal principles and standard of review. "[General Statutes §] 46b-62 governs the award of attorney's fees in family court proceedings and provides in relevant part that the court may order . . . any parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82, the alimony statute. These criteria include, inter alia, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties . . . . Courts ordinarily award counsel fees . . . so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . An exception to the rule . . . is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine its prior financial orders . . . . [A]n award of attorney's fees . . . is warranted only when at least one of two circumstances is present: **(1)** one party does not have ample liquid assets to pay for attorney's fees; or **(2)** the failure to award attorney's fees will undermine the court's other financial orders." **(Citation omitted; internal quotation marks omitted.)** Id., 807–808.

"A trial court is not limited to awarding fees for proceedings at the trial level. Connecticut courts have permitted postjudgment awards of attorney's fees to defend

that the defendant has briefed concerning attorney's fees is directed to the $3500 in appellate attorney's fees that the court awarded in granting the plaintiff's January 24, 2024 motion for appellate attorney's fees. Insofar as the defendant claims that any other attorney's fees award was improper, we deem any such claim to be abandoned as inadequately briefed. See *Robb* v. *Connecticut Board of Veterinary Medicine*, 204 Conn. App. 595, 611, 254 A.3d 915 ("We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.)), cert. denied, 338 Conn. 911, 259 A.3d 654 (2021).

an appeal. . . . Whether to allow counsel fees, [under § 46b-62 (a)], and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Citation omitted; internal quotation marks omitted.) *Dolan* v. *Dolan*, 211 Conn. App. 390, 405–406, 272 A.3d 768, cert. denied, 343 Conn. 924, 275 A.3d 626 (2022).

The following additional procedural history is relevant to our resolution of the defendant's claim. On June 28, 2024, the court held an evidentiary hearing on the plaintiff's January 24, 2024 motion for appellate attorney's fees. The court heard testimony from the parties and accepted their submissions of updated financial affidavits.

On July 18, 2024, the trial court granted the plaintiff's January 24, 2024 motion for appellate attorney's fees and awarded her $3500, finding that she had paid that amount to her appellate counsel with respect to the filing of her opposition to the petition. In an articulation of its order,[13] the trial court stated that "[t]he basis for, and the circumstances surrounding, the prior award for [$10,000 in] appellate [attorney's] fees [on August 25, 2022] are as compelling now as they were when upheld by this court. The defendant lost his argument [against] attorney's fees at the trial court level. He lost again at the appellate court level. The plaintiff was forced to expend funds to defend her position at each of these stages. The defendant then made the decision to appeal [this] court's decision [in *Gainty* v. *Infantino*, supra, 222 Conn. App. 785] to [our] Supreme Court. He made this decision with the understanding that this would cause the plaintiff to incur additional legal fees to defend her position. She did so. She hired private counsel and paid

---

[13] On February 18, 2025, in response to an order issued by this court on February 5, 2025, the trial court issued an articulation with respect to its orders awarding the plaintiff (1) $3500 in appellate attorney's fees and (2) $1000 in attorney's fees attendant to the plaintiff's April 3, 2024 contempt motion.

$3500 to this counsel to defend against the . . . petition . . . . This was a sound investment on her part, as the petition was dismissed, [this] court and the trial court's decisions were upheld, and the plaintiff was once again able to recoup the funds she had expended to receive the expanded child support for her disabled child. To deny the plaintiff her award of [appellate] attorney's fees for the . . . petition would undermine the trial court's prior financial orders and lead to an inequitable result."[14]

The defendant claims that the court abused its discretion in granting the plaintiff's January 24, 2024 motion for appellate attorney's fees. The defendant asserts that the court "never considered whether there was any misconduct, bad faith, frivolity, waste, or any other claim of untoward conduct, including whether substantial or not," thereby precluding it from awarding appellate attorney's fees to the plaintiff on the ground that failing to award them would undermine its other financial orders.[15] We disagree.

The defendant does not cite any legal authority providing that misconduct must be found in order for a

___

[14] Additionally, the court stated that it did not find the defendant credible insofar as he claimed that he was unable to pay for the plaintiff's appellate attorney's fees.

[15] The defendant further contends that two cases that the court cited in its articulation—*Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 999 A.2d 721 (2010), and *Sachs* v. *Sachs*, 60 Conn. App. 337, 759 A.2d 510 (2000)—are distinguishable, and, therefore, the court improperly relied on them. In its articulation, however, the court did not perform a substantive evaluation and application of those cases; rather, it cited *Misthopoulos* for the proposition that "Connecticut law is clear that trial courts have the authority to award appellate [attorney's] fees" and *Sachs* for the proposition that "[a]n award of attorney's fees is justified if the failure to make an award would undermine the trial court's prior financial orders." The defendant does not argue that either of these legal tenets is unsound. Thus, we reject the defendant's contention.

Additionally, the defendant asserts that the court's finding that he filed the petition "with the understanding that this would cause the plaintiff to incur additional legal fees to defend her position" was clearly erroneous. Assuming, without deciding, that this finding was clearly erroneous, we conclude that any such error is harmless. "[W]here . . . some of the facts found [by the trial court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous

court to award attorney's fees on the ground that failing to award them would undermine the court's other financial orders. Indeed, our precedent does not support that proposition. In *Ramin* v. *Ramin*, 281 Conn. 324, 915 A.2d 790 (2007), our Supreme Court iterated the general rule, also referred to as the "*Maguire* rule";[16] id., 327; that awarding attorney's fees "is warranted only when at least one of two circumstances is present: (1) one party does not have ample liquid assets to pay for attorney's fees; or (2) the failure to award attorney's fees will undermine the court's other financial orders." Id., 352. Our Supreme Court then recognized a "limited expansion of [the] *Maguire* [rule]"; id., 354; explaining that, "when a party has engaged in egregious litigation misconduct that has required the other party to expend significant amounts of money for attorney's fees, and where the [trial] court determines, in its discretion, that the misconduct has not been addressed adequately by other orders of the [trial] court, the [trial] court has discretion to award attorney's fees to compensate for the harm caused by that misconduct, irrespective of whether the other party has ample liquid assets and of whether the lack of such an award would undermine the [trial] court's other financial orders."[17] Id., 357; see also *Pena* v. *Gladstone*, 168 Conn. App. 141, 161 n.16, 144 A.3d 1085 (2016) (construing *Ramin* to permit trial court to award attorney's fees "even if the innocent party possesses ample liquid funds and regardless of whether the [trial] court's other financial orders would be undermined"). In other words, a trial court's finding that failing to award attorney's fees would undermine its

findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's [fact-finding] process, a new hearing is required." (Internal quotation marks omitted.) *Autry* v. *Hosey*, 200 Conn. App. 795, 801, 239 A.3d 381 (2020). As we conclude in part II of this opinion, the court's finding that failing to award appellate attorney's fees to the plaintiff would undermine its other financial orders was sufficient to justify its appellate attorney's fees award. Thus, any erroneous finding concerning the defendant's motivation in filing the petition is harmless.

[16] See *Maguire* v. *Maguire*, 222 Conn. 32, 44, 608 A.2d 79 (1992).

[17] Our Supreme Court later clarified that the limited expansion of the *Maguire* rule recognized in *Ramin* "is limited to discovery misconduct . . . ." *Berzins* v. *Berzins*, 306 Conn. 651, 657, 51 A.3d 941 (2012).

other financial orders is a stand-alone ground on which the court may base an attorney's fees award, with no attendant finding of misconduct required.

In the present case, in awarding the plaintiff $3500 in appellate attorney's fees, the court expressly found that rejecting the plaintiff's request for such fees "would undermine the . . . court's prior financial orders and lead to an inequitable result," which reasoning was sufficient to justify the award. Accordingly, we conclude that the court did not abuse its discretion in granting the plaintiff's January 24, 2024 motion for appellate attorney's fees.

## III

The defendant's final claim is that the trial court improperly granted the plaintiff's April 3, 2024 contempt motion insofar as the court found him in contempt of the May 11, 2022 decision requiring him to pay the plaintiff $44,651.78 in medical and school expenses.[18] The defendant maintains that the May 11, 2022 decision conflicted with two prior orders, and, therefore, the court improperly determined that the May 11, 2022 decision was clear and unambiguous. This claim is unavailing.

"Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . [C]ivil contempt is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts. . . . In part because the contempt remedy is particularly harsh . . . such punishment should not rest upon implication or conjecture, [and] the language [of the court order] declaring . . . rights should be clear,

---

[18] In granting the plaintiff's April 3, 2024 contempt motion, the court, *Alfano, J.*, also found the defendant in contempt of (1) the August 25, 2022 decision by the court, *Hon. Constance L. Epstein*, judge trial referee, awarding $10,000 in appellate attorney's fees, (2) the magistrate's February 23, 2023 award of $1000 in attorney's fees, and (3) the magistrate's November 1, 2023 award of $1000 in attorney's fees. The defendant has not briefed any claims of error with regard to those contempt findings.

or imposing burdens [should be] specific and unequivocal, so that the parties may not be misled thereby. . . . To constitute contempt, it is not enough that a party has merely violated a court order; the violation must be wilful. . . . It is the burden of the party seeking an order of contempt to prove, by clear and convincing evidence, both a clear and unambiguous directive to the alleged contemnor and the alleged contemnor's wilful noncompliance with that directive. . . . The question of whether the underlying order is clear and unambiguous is a legal inquiry subject to de novo review. . . . If we answer that question affirmatively, we then review the trial court's determination that the violation was wilful under the abuse of discretion standard." (Internal quotation marks omitted.) *Margarita O.* v. *Fernando I.*, 231 Conn. App. 190, 200, 333 A.3d 530, cert. denied, 352 Conn. 904, 335 A.3d 845 (2025).

The following additional procedural history is relevant to our resolution of the defendant's claim. On December 6, 2018, the plaintiff, representing herself, filed a motion for a postsecondary educational support order for the parties' children. On January 15, 2019, the defendant filed a motion to dismiss the plaintiff's motion, arguing that the court lacked subject matter jurisdiction to enter a postsecondary educational support order pursuant to the governing statute, General Statutes § 46b-56c,[19] because the paternity judgment against him setting forth the initial child support orders was rendered prior to October 1, 2002. On February 13, 2019, the court, *Nastri, J.*, granted the defendant's motion to dismiss and denied the plaintiff's motion, concluding that, pursuant to § 46b-56c, it lacked subject matter jurisdiction to enter

[19] General Statutes § 46b-56c (*l*) provides: "The provisions of this section shall apply only in cases when the initial order for parental support of the child is entered on or after October 1, 2002."

Section 46b-56c was amended by No. 21-104, § 19, of the 2021 Public Acts and No. 22-123, § 40, of the 2022 Public Acts, which made changes to the statute that are not relevant to this appeal. Accordingly, all references in this opinion to § 46b-56c are to the current revision of the statute.

a postsecondary educational support order (February 13, 2019 decision).

On June 5, 2019, in connection with a motion for contempt filed on February 6, 2019, the family support magistrate, Frederic Gilman, ordered the parties to brief whether certain expenses claimed by the plaintiff in relation to an institution called Franklin Academy were "necessary, appropriate, and considered medical . . . ." The parties complied with the briefing order. On September 18, 2019, the magistrate issued a decision on the February 6, 2019 contempt motion, finding the defendant not to be in contempt (September 18, 2019 decision). The September 18, 2019 decision further included the following statement: "Contempt concluded; Regarding Franklin Academy."

On April 16, 2022, in connection with the motions filed by the plaintiff in December, 2019, the court, *Hon. Constance L. Epstein*, judge trial referee, ordered the parties to submit proposed orders, with the plaintiff required to identify "specific monetary amounts" and the defendant required to indicate "whether he agree[d] or disagree[d] with each amount listed in the plaintiff's proposed orders." Thereafter, the plaintiff filed proposed orders, but the defendant did not. In the April 28, 2022 decision, the court awarded the plaintiff 50 percent of medical and school expenses that she had incurred up to January 25, 2022. The court further ordered the plaintiff to submit a chronological list of her claimed medical and school expenses, with which order the plaintiff subsequently complied. According to that list, the plaintiff allocated $44,651.78 to the defendant for medical and school expenses, approximately $42,000 of which comprised expenses for Franklin Academy and Landmark College, which schools, as the court found in the April 28, 2022 decision, were "residential facilities for individuals with learning and other disabilities, and . . . provide[d] special supervision and attention." In the May 11, 2022 decision, the court awarded the

plaintiff $44,651.78, the full amount in medical and school expenses that she requested.

In the 2022 appeal, as this court previously detailed, the defendant claimed, inter alia, that the trial court improperly awarded the plaintiff the expenses relating to Franklin Academy and Landmark College because "the plaintiff's entitlement to reimbursement for Franklin Academy and Landmark College expenses was addressed by two prior court orders. First, he note[d] that the [trial] court, *Nastri, J.*, on February 13, 2019, denied the plaintiff's motion for a postsecondary educational support order for both the parties' son and daughter. Second, he note[d] that the . . . magistrate . . . denied the [February 6, 2019] motion for contempt, which motion included an allegation that the defendant failed to pay 50 percent of the costs of the daughter attending Franklin Academy. According to the defendant, because the plaintiff previously litigated and was unsuccessful with regard to her claims that the defendant should share in the Franklin Academy and Landmark College costs, her claims . . . [were] barred by res judicata and collateral estoppel." (Footnote omitted.) *Gainty* v. *Infantino*, supra, 222 Conn. App. 800–801. This court declined to review that claim because it was unpreserved, stating that "[a]t no point . . . did the defendant alert the [trial] court [*Hon. Constance L. Epstein*, judge trial referee] to any argument of collateral estoppel or res judicata with respect to the Franklin Academy or Landmark College expenses related to [the] daughter"; id., 801; and that "[this court's] examination of the record reveal[ed] that the defendant did not raise with the trial court any of the claims he [was] . . . advanc[ing] on appeal with respect to the Landmark College and Franklin Academy expenses." Id., 802. Additionally, this court stated that, "[a]s to the defendant's related contention that [the trial court, *Nastri, J.*, in the February 13, 2019 decision] correctly determined that the costs for Landmark College exceeded the [trial] court's statutory authority pursuant to § 46b-56c, [the trial court] was never asked to address a claim under § 46b-84 (c). In fact, [the trial court's] ruling

denying the plaintiff's motion for postsecondary educational support made no mention of § 46b-84 (c), Landmark College, or the disabilities of the . . . daughter." Id., 801.

On June 28, 2024, the court, *Alfano*, *J.*, held an evidentiary hearing on the plaintiff's April 3, 2024 contempt motion. During closing argument, the defendant's counsel argued that the May 11, 2022 decision was not clear and unambiguous in light of the February 13, 2019 decision and the September 18, 2019 decision, which, according to counsel, remained binding and conflicted with the May 11, 2022 decision. On July 18, 2024, the court found the defendant in contempt of the May 11, 2022 decision, which the court determined to be clear and unambiguous.

The defendant contends that the court improperly found him in contempt of the May 11, 2022 decision because that decision was not clear and unambiguous. The defendant maintains that the February 13, 2019 decision and the September 18, 2019 decision, which, as he posits, "are as final and binding on the parties today as they were when entered," conflict with the May 11, 2022 decision, such that "[t]he existence of these orders represents a 'good faith dispute' between the parties that removes this matter from the realm of contempt." We reject this claim.

First, we conclude that the defendant's claim effectively constitutes a veiled, impermissible collateral attack on the May 11, 2022 decision. As we set forth in part I of this opinion, a contempt proceeding cannot be utilized to mount a collateral attack on the order underlying the proceeding. See *Tatro* v. *Tatro*, supra, 24 Conn. App. 187–88. Insofar as the defendant's claim is premised on the position that the May 11, 2022 decision improperly reimbursed the plaintiff for expenses that, as he posits, previously had been disallowed, such an assertion—presuming that it was preserved—should have been raised on appeal from the May 11, 2022 decision. As this court previously determined, in the 2022 appeal, the defendant attempted to rely on the February 13, 2019 decision and

the September 18, 2019 decision to challenge the propriety of the May 11, 2022 decision; however, this court declined to review the merits of that claim because the defendant had failed to preserve it before the trial court. *Gainty* v. *Infantino*, supra, 222 Conn. App. 800–802. The defendant now is seeking, in essence, to resurrect his unpreserved claim in the context of a contempt proceeding to attack collaterally the May 11, 2022 decision, which maneuver cannot be permitted.

Second, assuming that the defendant's claim is proper, we conclude that neither the February 13, 2019 decision nor the September 18, 2019 decision conflicts with the May 11, 2022 decision, and, therefore, the defendant's claim fails. In the February 13, 2019 decision, the court, *Nastri, J.*, rejected the plaintiff's claim for postsecondary educational support pursuant to § 46b-56c; however, the court made no mention of § 46b-84, the disabilities of the parties' daughter, or any particular expenses. See id., 801 ("As to the defendant's related contention that [the court in the February 13, 2019 decision] correctly determined that the costs for Landmark College exceeded the court's statutory authority pursuant to § 46b-56c, [the court] was never asked to address a claim under § 46b-84 (c). In fact, [the court's] ruling denying the plaintiff's motion for postsecondary educational support made no mention of § 46b-84 (c), Landmark College, or the disabilities of the parties' daughter."). Thus, we discern no conflict between the February 13, 2019 decision and the May 11, 2022 decision.

As to the September 18, 2019 decision, the only reference therein to Franklin Academy was the following statement: "Contempt concluded; Regarding Franklin Academy." We cannot reasonably construe that isolated statement to mean that the magistrate had determined that the plaintiff could not seek reimbursement for *any* claimed Franklin Academy expenses; indeed, reaching such a conclusion would require us to resort to speculation and conjecture. See *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 502, 510, 970

A.2d 578 (2009) ("speculation and conjecture . . . have no place in appellate review" (internal quotation marks omitted)). Accordingly, we do not agree with the defendant that the September 18, 2019 decision and the May 11, 2022 decision conflict with one another.[20]

In sum, we conclude that the court properly found the defendant in contempt of the May 11, 2022 decision.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[20] The defendant also argues that, "when two of the orders say there is no obligation, and one says there should be a repayment of an obligation for which [he] remains responsible, if there was never an obligation in the first place because of a court order, there could be no repayment or remaining responsibility under pain of contempt." (Emphasis omitted; internal quotation marks omitted.) We are not compelled by this fleeting argument.